UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
BALJINDER KAUR, ATUL KAMATH,            ECF CASE
AVTAR KAUR, BALJEET KAUR,
VIMLA PATEL, VINITA ARORA, MANJIT      05-CV-4725 (NGG)(JO)
SINGH, and KAMEENA BAMBAM,

                    Plaintiffs,

      -against-

ROYAL ARCADIA PALACE, INC., and
GEORGE RAJU VARGHESE, GEORGE
VARGHESE, ROY MATHEWS, THOMAS
MATHEWS, CARMO LOBO, and TARIQ
LONGI, d/b/a MALABAR PALACE

                 Defendants.
---------------------------------------------------------X


DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT


Joseph M. Labuda (JL 5213)
Jamie S. Felsen (JF 7876)
Milman & Heidecker
Attorneys for Defendants
3000 Marcus Avenue, Suite 3W3
Lake Success, New York 11042
(516) 328-8899

Date of Service:  May 7, 2007

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS .............................................................................................................................. 1

ARGUMENT ..................................................................................................................... 3

    POINT I
    SUMMARY JUDGMENT STANDARD ....................................................................... 3

    POINT II
    PLAINTIFFS' WAGE CLAIMS ARE NOT COVERED UNDER THE FLSA ............................ 3

    POINT III
    THE INDIVIDUAL DEFENDANTS WERE NOT PLAINTIFFS' EMPLOYERS AND
    ARE NOT LIABLE FOR PLAINTIFFS' ALLEGED UNPAID WAGES ...................................... 4

    POINT IV
    PLAINTIFFS FLSA CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF
    LIMITATIONS AND THIS COURT SHOULD DECLINE TO EXERCISE
    SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW AND
    COMMON LAW CLAIMS ........................................................................................ 13

    POINT V
    PLAINTIFFS ARE BARRED FROM BRINGING THIS ACTION AS THEY WAITED
    OVER TWO (2) YEARS TO BRING THEIR CLAIM TO THE DETRIMENT OF
    DEFENDANTS ......................................................................................................... 14

    POINT VI
    ROYAL ARCADIA WAS NOT THE SUCCESSOR TO MALABAR PALACE, AND IS
    NOT LIABLE FOR PLAINTIFFS' ALLEGED UNPAID WAGES ............................................. 15

    POINT VII
    DEFENDANTS DID NOT DEFRAUD PLAINTIFFS ..................................................... 18

    POINT VIII
    DEFENDANTS DID NOT ENTER INTO A CONTRACT WITH PLAINTIFFS TO
    REPAY BACK WAGES OR TO REPAY LOANS ........................................................ 21

    POINT IX
    DEFENDANTS WERE NOT UNJUSTLY ENRICHED .................................................. 22

CONCLUSION ............................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

29 U.S.C. § 201 ................................................................................................. 4
29 U.S.C. § 203 ............................................................................................. 3, 4
29 U.S.C. § 203(r)(1) ........................................................................................ 3
29 U.S.C. § 203(s)(1) ........................................................................................ 3
29 U.S.C. § 206(a) ............................................................................................ 3
29 U.S.C. § 255 .............................................................................................. 13
F.R.C.P. 56(c) ................................................................................................... 3
Fair Labor Standards Act, 29 U.S.C. § 201 et seq. .......................................... 1
N.Y.C.C.R. § 137 .............................................................................................. 4
New York Labor Law § 650 et seq. .................................................................. 4
N.Y. GEN. OBLIG. LAW § 5-701(a)(1) ............................................................. 22


Abdel-Khalek v. Ernst & Young LLP, 1999 U.S. Dist. Lexis 2369 (S.D.N.Y. March 5, 1999).. 15
Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450 (2d Cir. 2007) ................. 3
Boekemeier v. Fourth Universalist Soc'y, 86 F. Supp. 2d 280 (S.D.N.Y. 2000) ......................... 3
Bongat v. Fairview Nursing Care Ctr., Inc., 341 F. Supp. 2d 181 (E.D.N.Y. 2004) .................... 23
Brewster v. Nassau County, 349 F. Supp. 2d 540 (E.D.N.Y. 2004) ............................................ 13
Brock v. La Grange Equipment Co., 1987 U.S. Dist. LEXIS 14532 (D. Neb. 1987) .................... 15
Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988) .............................................................. 13
Chao v. Vidtape, Inc., 196 F. Supp. 2d 281 (E.D.N.Y. 2002) ..................................... 4, 7, 10, 11
Chen v. St. Beat Sportswear, Inc., 364 F. Supp. 2d 269 (E.D.N.Y. 2005) ............................ 20, 21
Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, (2d Cir. 2003) ................................................. 19
Escobar v. Orlando Brewing Partners, Inc., 2005 U.S. Dist. LEXIS 30709 (M.D. Fl.
    2005) ...............................................................................................................5, 7, 10, 11
Fourth Toro Family Ltd. Pshp. v. PV Bakery, Inc., 88 F. Supp. 2d 188 (S.D.N.Y. 2000) ........... 14
Gilliam v. Addicts Rehab. Ctr. Fund, 2006 U.S. Dist. LEXIS 21377 (S.D.N.Y. 2006) ................ 4
Heng Chan v. Sung Yue Tung Corp., 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. 2007) ..... 5, 7, 10, 11
Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132 (2d Cir. 1999) .................................................... 4
Jankowski v. Castaldi, 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. 2006) ......................... 5, 7, 10, 11
Kolari v. New York-Presbyterian Hosp., 455 F.3d 118 (2d Cir. 2006) ....................................... 13
Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413 (1996) ................................................. 18
Legislator 1357 Ltd. v. MGM, 452 F. Supp. 2d 382 (S.D.N.Y. 2006) ....................................... 14
McLaughlin v. Richland Shoe Co., 486 U.S. 123 (1988) ........................................................... 13
Nesbitt v. Bun Basket, 780 F. Supp. 1151 (W.D. Mich. 1991) .................................................. 13
Petras v. Johnson, 1993 U.S. Dist. LEXIS 8464 (S.D.N.Y. June 22, 1993) .......................... 20, 21
Sheehy v. Clifford Chance Rogers & Wells LLP, 3 N.Y.3d 554 (2004); .................................... 22
Steinbach v. Hubbard, 51 F.3d 843 (9th Cir. 1995) .................................................................. 15
Stillman v. Kalikow, 802 N.Y.S.2d 714 (2d Dep't 2005) ........................................................... 22
Tony & Susan Alamo Found. V. Sec'y of Labor, 471 U.S. 290 (1985) ........................................ 3
Town of Southold v. Town of E. Hampton, 477 F.3d 38 (2d Cir. 2007) ...................................... 3
Xelo v. Mavros, 2005 U.S. Dist. LEXIS 21588 (E.D.N.Y. 2005) .............................................. 13

**PRELIMINARY STATEMENT**

Defendants, Royal Arcadia Palace, Inc., George Raju Varghese, George, Varughese, Roy Mathew, Thomas Mathews, and Carmo Lobo (hereinafter collectively referred to as "Defendants")[1], respectfully seek an Order granting summary judgment in their favor on the ground that they are entitled to judgment as a matter of law on all claims asserted against them by Plaintiffs.[2]

Based upon the undisputed facts in this matter, Plaintiffs cannot demonstrate that any of the Defendants were: (1) Plaintiffs' employers pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.; or (2) successors to Malabar Palace. Therefore, Defendants are not responsible for Plaintiffs' unpaid wages.

Moreover, Plaintiffs' remaining causes of action must likewise be dismissed: (1) Defendants did not defraud Plaintiffs; (2) no contract existed between Plaintiffs and Defendants that required Defendants to repay Plaintiffs for unpaid wages and for loans; and (3) Defendants were not unjustly enriched by Malabar Palace's alleged failure to pay Plaintiffs' wages and to repay Plaintiffs for loans.

As a result, the instant claims must be dismissed as a matter of law and judgment awarded in favor of Defendants.

**FACTS**

Plaintiffs were employees of an Indian restaurant, Malabar Palace ("Malabar") (who is not a party to this action) as waiters and cooks, and in office positions, between 1999 and August 2003. Malabar was owned and managed by Sayed Hussein ("Sayed") and Mohammed

---

[1] Defendant Tariq Longi is not moving for summary judgment.
[2] Plaintiffs Vimla Patel and Vinita Arora failed to appear at their depositions and have failed to prosecute their claims. A motion to dismiss Patel and Arora, pursuant to F.R.C.P. Rule 37(d) and Rule 41(b), is pending before Magistrate Judge James Orenstein.

Ali Kutty ("Ali"), each of whom owned 50% of the restaurant. In August 2003, Malabar closed. Plaintiffs allege that they were not paid for the work they performed at Malabar and for loans they gave to Ali and Sayed.

Royal Arcadia incorporated in August 2003 for the purpose of going into the Indian sweets business. In September 2003, upon learning that Malabar closed, Royal Arcadia entered into a lease to rent the space where Malabar was located. Royal Arcadia opened for business in December 2003 after construction was complete on the premises. Royal Arcadia is owned by Raju, Varughese, Lobo, and Mathews.

The Defendants had no ownership or management responsibilities at Malabar Palace. Since 1996, George Raju Varghese ("Raju") has worked full-time at a jewelry store. Since 1985, George Varughese ("Varughese") has worked full-time as an auditor at New York Power Authority. Since 1996, Thomas Mathews ("Mathews") has worked full-time as property manager of American Gardens, a real estate management company. Roy Mathew ("Mathew") worked full-time at Rojwog Food from 1999-2002, then went to India for six months, then worked for Quick Trucking for three months, and then went back to India for two months. Defendants did not have any role in the operations of Malabar. Defendants: (1) did not have the power to hire or fire Plaintiffs at Malabar, (2) did not hire or fire Plaintiffs at Malabar, (3) did not supervise and control Plaintiffs' work schedules or conditions of employment at Malabar, (4) did not determine the rate and method of Plaintiffs' payment at Malabar, and (5) did not maintain Plaintiffs' employment records at Malabar.

For a full recitation of the material facts and circumstances, the Court's attention is respectfully referred to Defendants' Statement of Material Facts, submitted pursuant to Federal Rule of Civil Procedure ("FRCP") 56 and Local Civil Rule 56.1, which has been filed contemporaneously with the foregoing memorandum of law.

- 2 -

## ARGUMENT

### POINT I

### SUMMARY JUDGMENT STANDARD

Summary judgment under FRCP 56 is appropriate only where there has been a showing of no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See F.R.C.P. 56(c); Town of Southold v. Town of E. Hampton, 477 F.3d 38 (2d Cir. 2007).  A genuine issue of material fact exists only where there is sufficient evidence which favors the non-moving party such that a jury could return a verdict in favor of that party. F.R.C.P. 56(c); Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 455-56 (2d Cir. 2007).  The evidence on a summary judgment motion is viewed in the light most favorable to the non-moving party, with all reasonable inferences drawn therefrom and resolving all ambiguities in their favor.  Town of Southold, 477 F.3d 38; Allstate, 473 F.3d at 456.

### POINT II

### PLAINTIFFS' WAGE CLAIMS ARE NOT COVERED UNDER THE FLSA

In order for the FLSA to apply, the employer must be a business enterprise engaged in commerce with annual gross sales of over $500,000.  See 29 U.S.C. § 206(a); 29 U.S.C. § 203(r)(1); 29 U.S.C. § 203(s)(1). In the case at hand, during the relevant time, Malabar did not have annual gross sales of over $500,000, and there is no evidence that Malabar (an Indian restaurant in Queens) engaged in interstate commerce.  Therefore, since Plaintiffs' wage claims revolve around their work at Malabar, the FLSA claims should be dismissed.  Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 295 n. 8 (1985);  Boekemeier v. Fourth Universalist Soc'y, 86 F. Supp. 2d 280, 284 (S.D.N.Y. 2000).

**POINT III**

**THE INDIVIDUAL DEFENDANTS WERE NOT PLAINTIFFS' EMPLOYERS AND ARE NOT LIABLE FOR PLAINTIFFS' ALLEGED UNPAID WAGES**

Plaintiffs allege that Defendants are liable for payment of Plaintiffs' wages under the FLSA and New York Labor Laws. 29 U.S.C. § 201 et seq., New York Labor Law § 650 et seq. and N.Y.C.C.R. § 137.

The Fair Labor Standards Act ("FLSA") defines "employer" to include any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203. The Second Circuit uses the "economic reality" test in determining what constitutes an employer under the FLSA. The factors used are: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Gilliam v. Addicts Rehab. Ctr. Fund, 2006 U.S. Dist. LEXIS 21377 (S.D.N.Y. 2006) citing Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).[3] No one of the four factors standing alone is dispositive. Herman at 139. Instead, the "economic reality" test encompasses the totality of circumstances, no one of which is exclusive. Herman at 139.

Courts have consistently held that where these four (4) factors are not met, there is no liability under the FLSA. See Chao v. Vidtape, Inc., 196 F. Supp. 2d 281 (E.D.N.Y. 2002), aff'd in part, modified in part, 66 Fed. Appx. 261 (2d Cir. 2003)(holding that an individual defendant was not an employer under the FLSA, where the defendant, who was the father of the other individual defendants, was never a shareholder, corporate officer, or employee of the corporate defendant, never gave orders, never hired, fired, or set policies for employees, visited

---

[3] The test for determining whether an individual qualifies as an "employer" is the same under the FLSA and New York Labor Law. Heng Chan v. Triple 8 Palace, Inc., 2006 U.S. Dist. LEXIS 15780 (S.D.N.Y. 2006).

his sons at work during the midday and discussed financial matters with them at lunch, brought lunch for his sons a few days a week and during the time he was at the office, he read a religious book); <u>Jankowski v. Castaldi</u>, 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. 2006)(granting summary judgment to individual defendant where she offered extensive evidence in support of her claim that she was not plaintiffs' employer); <u>Heng Chan v. Sung Yue Tung Corp.</u>, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. 2007)(holding that an individual who owned three shares of the defendant corporation, and who also worked at the restaurant, was not an employer under the FLSA and New York Labor Law); <u>Escobar v. Orlando Brewing Partners, Inc.</u>, 2005 U.S. Dist. LEXIS 30709 (M.D. Fl. 2005)(holding that officer of defendant corporation who did not direct the day-to-day operations of the business, did not set employee schedules, and could not hire or fire employees, was not an employer under the FLSA).

In this case, the undisputed facts demonstrate that Defendants were not Plaintiffs' employers under the FLSA and New York Labor Law.  Defendants did not have the power to hire or fire Plaintiffs, did not hire or fire Plaintiffs, did not direct Plaintiffs' conditions of employment, did not set schedules or wages of Plaintiffs, and did not maintain Plaintiffs' employment records.  Instead, it is clear that Ali and Sayed were Plaintiffs' employers.

1.     **<u>Defendants did not hire and fire Plaintiffs and did not have the authority to do so</u>**

The facts of this case establish that the owners of Malabar, Ali and Sayed, hired the employees.  Defendants were not involved in hiring any employees of Malabar.

In this case, Ali hired Avtar Kaur ("A. Kaur") to work at Malabar.  Approximately one week before A. Kaur started working at Malabar, she met with Ali and Sayed in their office at Malabar.  A. Kaur asked Ali and Sayed for work.  Ali told A. Kaur that the restaurant was expanding and that they needed workers, and that if A. Kaur knew anybody looking for a job to refer those people to Ali and Sayed.  During the meeting Ali told A. Kaur that she was

hired, that she would start on Monday, that she would be paid $6 per hour, that she would work six days per week from 7:00 a.m. until 7:00 p.m., and that she would be making breads. Ali also asked A. Kaur if she could work overtime, but she told him that she was unable to do so.

Sayed hired Baljeet Kaur ("Baljeet") to work at Malabar. Baljeet's husband Manjit Singh, who was already a Malabar employee, brought Baljeet into Malabar and spoke to Sayed about hiring Baljeet. Sayed met with Baljeet and told her that she was hired, that she would work 7:00 a.m. until 7:00 p.m., and that she would be paid $300 per week.

Ali and Sayed hired Baljinder Kaur ("Baljinder") to work at Malabar. Baljinder found out from Rani Surinder ("Surinder"), a former employee of Malabar, that Malabar was hiring. Surinder brought Baljinder into the office at Malabar, and Baljinder spoke to Ali and Sayed about a job at Malabar. During the meeting, Sayed told Baljinder that she would be paid $400 per week, that she would work seven days per week from 7:00 a.m. until 7:00 p.m., that she could take off one day per month initially and could take off more time later on, that she would make different types of stuffed breads (e.g. potato, cauliflower, spinach, roti, and lachadar) and would wash dishes, and that she should start working immediately.

Ali and Sayed also hired Kameena Bambam ("Bambam") to work at Malabar. Bambam found out that Malabar was hiring while she was at a wedding. At the wedding, someone told her to speak to Ali about a job opening at Malabar. In June 2003, Bambam met with Ali and Sayed at Malabar for a job interview. During the interview, Ali and Sayed told Bambam that they had a vacancy for an office position that involved printing out labels and other office work, and that she would have to start at 8:00 a.m. Bambam, Ali, and Sayed agreed that Bambam would start working at Malabar that weekend.

Ali and Sayed also hired Manjit Singh ("Singh") to work at Malabar. Sayed used to buy a newspaper from Singh every morning. One day, Sayed asked Singh to work for him at Malabar. Thereafter, Singh met with Ali and Sayed at Malabar for a job interview. During the

interview, Ali and Sayed asked Singh what he could do at the restaurant.  Ali and Sayed told Singh that he would be paid $350 per week, that he would work six days per week and nine hours each day, and that the first few weeks would be a trial period.  After working at Malabar for two weeks, Sayed told Singh that he could work at Malabar permanently.

Ali and Sayed also hired Atul Kamath ("Kamath") to work at Malabar.  Kamath interviewed with Ali and Sayed at Malabar.  During the interview, Ali and Sayed told Kamath that he would be paid $300 per week plus tips, that he would work six days per week from 10 a.m. until 9:00 or 10:00 p.m., that he would be paid weekly, and that he should keep the restaurant neat.  At the end of the interview, Ali and Sayed told Kamath that he was hired.

In contrast, it is patently clear that Defendants Raju, Varughese, Lobo, Mathews, and Mathew did not have the authority to hire or fire Plaintiffs.  In fact, according to Plaintiffs' own testimony, Defendants played absolutely no role in their hiring or in setting the terms or conditions of Plaintiffs' employment at Malabar.  Courts have refused to impose liability under the FLSA when defendants are not involved in the hiring or firing process,.  See Heng Chan v. Sung Yue Tung Corp., 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. 2007); Chao v. Vidtape, Inc., 196 F. Supp. 2d 281 (E.D.N.Y. 2002); Jankowski v. Castaldi, 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. 2006); Escobar v. Orlando Brewing Partners, Inc., 2005 U.S. Dist. LEXIS 30709 (M.D. Fl. 2005).

This factor weighs heavily in favor of finding that Defendants were not Plaintiffs' employers as defined under the FLSA and New York Labor Law.

**2.      Defendants did not supervise and control Plaintiffs' work schedules or conditions of   employment**

The undisputed facts establish that Ali and Sayed (not Defendants) supervised and controlled the schedules and work conditions of the Malabar employees.

Ali and Sayed supervised A. Kaur at Malabar.  Every morning at approximately 7:00 a.m., Sayed gave A. Kaur written instructions on how much bread to make.  Sometimes Ali also gave A. Kaur written instructions.  Ali and Sayed told A. Kaur and the other kitchen workers to clean the dishes and the kitchen.  When the kitchen was short of supplies, A. Kaur told Sayed.  When A. Kaur was not paid her wages, she complained to Ali and Sayed.  Ali and Sayed set A. Kaur's work schedule and wages.

Sayed supervised Baljeet at Malabar.   Sayed told Baljeet what she needed to do, including giving her and the kitchen workers the bread orders.  Sayed also told Baljeet and the other kitchen workers to wash the kitchen.  Sayed set Baljeet Kaur's work schedule and wages.  Baljeet complained to Sayed when she was not paid.

Sayed and Ali supervised Baljinder at Malabar.  Everyday, Sayed gave Baljinder bread orders, which included potato bread, cauliflower bread, methi bread, mint paratha, onion paratha, gujrati paratha, potato and daalpuri.  Ali also gave Baljinder bread orders.  Sayed told Baljinder to clean the dishes.  Sayed set Baljinder's work schedule and wages.

Sayed and Ali supervised Bambam at Malabar.  On the day that Bambam started working at Malabar, Ali told Bambam that she would work Mondays through Saturdays from 8 a.m. until 6:00 p.m.  When Bambam's employment at Malabar began, Ali told Bambam to clean up the office and to place delivery calls.  Sayed told Bambam to help out in the kitchen with packaging.  During Bambam's first week of employment at Malabar, Ali told Bambam that she would be paid $8 per hour.

Sayed and Ali supervised Singh at Malabar.  After working at Malabar for two weeks, Sayed told Singh that he could work at Malabar permanently.  Sayed and Ali told Singh on a daily basis whether or not he was needed to work.  Singh worked in Malabar's kitchen and Sayed supervised him.  Sometimes Ali also gave Singh instructions.  Ali and Sayed paid Singh.  Ali and Sayed set Manjit Singh's work schedule.

- 8 -

Sayed and Ali supervised Kamath at Malabar.  Kamath spoke with Ali and Sayed about the presentation of the food, the maintenance of the restaurant, the buffet, and the details regarding parties at Malabar (e.g. the food and prices).  Ali told Kamath to clean the tables when the customers were finished eating.  When Kamath needed to take time off from work, he spoke to Ali and Sayed.  Ali told Kamath that when he took a day off, he would be paid one seventh less.  Ali paid Kamath.

In contrast, Raju, Varughese, Lobo, Mathews, and Mathew did not supervise and control Plaintiffs' work schedules or conditions of employment.  In fact, Defendants worked full-time jobs during the time that Plaintiffs were employed at Malabar.  For example, (1) from 1984 until 2000, during the evenings, Raju worked full-time at the New York City Transit Authority, and during the days from 1996 until the present, he has worked full-time at a jewelry store; (2) since 1985, Varughese has worked full-time as an auditor at the New York Power Authority; and (3) since 1996, Mathews has worked full-time as property manager of American Gardens, a real estate management company; and (4) Mathew worked full-time at Rojwog Food from 1999-2002, then went to India for six months, then worked for Quick Trucking for three months, and then went back to India for two months.  Thus, Defendants were not even at Malabar to direct or control Plaintiffs' conditions of employment.

Lastly, as discussed below, many of the Plaintiffs do not even know the Defendants, and the few that do know the Defendants, had little or no interaction with them.  The facts are so devoid of interaction between Plaintiffs and Defendants that an employer-employee relationship (let alone any relationship) cannot be found.  The record concerning each Defendant is as follows:

**Raju:**  Baljinder does not know Raju.  Baljeet and A. Kaur saw Raju at Malabar once a month, but they never spoke with him.  Singh saw Raju at Malabar once every two months, but

they never spoke to each other.  The only interaction that Kamath had with Raju at Malabar was serving him and his family food.

**Varughese:**  A. Kaur, Bambam, and Singh do not know Varughese.   The only interaction that Kamath had with Varughese at Malabar was serving him and his family food.  Baljeet saw Varughese at Malabar once a month, but she never spoke with him.  Baljinder saw Varughese at Malabar once every two to three months, but they never spoke with each other.

**Lobo:**  A. Kaur does not know Lobo.  Baljeet saw Lobo at Malabar one or two times, but she does not remember who he is.  Baljinder saw Lobo at Malabar once every two to three months, but they never spoke with each other.  Singh saw Lobo at Malabar once or twice a month.

**Mathews:**  A. Kaur, Baljinder, Singh, and Bambam do not know Mathews.  Kamath saw Mathews eating with his family at Malabar a few times.

**Mathew:**  A. Kaur, Singh, and Baljeet do not know Mathew.  Baljinder never spoke with Mathew at Malabar.

Since many of the Plaintiffs do not even know the Defendants and the few that do know the Defendants had limited or no interaction with them, the Defendants could not have supervised and controlled Plaintiffs conditions of employment and work schedules.

Thus, this factor weighs heavily in favor of finding that Defendants were not Plaintiffs' employers as defined under the FLSA and New York Labor Law.  See Chao v. Vidtape, Inc., 196 F. Supp. 2d 281 (E.D.N.Y. 2002); Jankowski v. Castaldi, 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. 2006); Heng Chan v. Sung Yue Tung Corp., 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. 2007); Escobar v. Orlando Brewing Partners, Inc., 2005 U.S. Dist. LEXIS 30709 (M.D. Fl. 2005).

**3.**     **Defendants did not determine the rate and method of Plaintiffs' pay**

As noted earlier, Ali and Sayed (not Defendants), determined the pay rates for Plaintiffs.

Ali determined A. Kaur's salary, which was $6 per hour.  Sayed determined Baljeet's salary, which was $300 per week.  Sayed determined Baljinder's salary, which was $400 per week.  Ali determined Bambam's salary, which was $8 per hour.  Ali and Sayed determined Singh's salary, which was $350 per week.  Ali and Sayed determined Kamath's salary, which was $300 per week plus tips.

Raju, Varughese, Lobo, Mathews, and Mathew were not involved in deciding the rate and method of Plaintiffs' wages.

Thus, this factor weighs heavily in favor of finding that Defendants were not Plaintiffs' employers as defined under the FLSA and New York Labor Law.  See Chao v. Vidtape, Inc., 196 F. Supp. 2d 281 (E.D.N.Y. 2002); Jankowski v. Castaldi, 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. 2006); Heng Chan v. Sung Yue Tung Corp., 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. 2007); Escobar v. Orlando Brewing Partners, Inc., 2005 U.S. Dist. LEXIS 30709 (M.D. Fl. 2005).

**4.      Defendants did not maintain Plaintiffs' employment records**

Lastly, Ali and Sayed (not Defendants) maintained Plaintiffs' employment records.  Sayed kept a diary of the days each employee worked.  None of the Defendants maintained any of Plaintiffs' employment records.

Thus, this factor weighs heavily in favor of finding that Defendants were not Plaintiffs' employers as defined under the FLSA and New York Labor Law.  See Chao v. Vidtape, Inc., 196 F. Supp. 2d 281 (E.D.N.Y. 2002); Jankowski v. Castaldi, 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. 2006); Heng Chan v. Sung Yue Tung Corp., 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. 2007); Escobar v. Orlando Brewing Partners, Inc., 2005 U.S. Dist. LEXIS 30709 (M.D. Fl. 2005).

**5.**     <u>**Miscellaneous Considerations**</u>

Many of the Plaintiffs gave loans to Ali and Sayed as investments in Malabar. Plaintiffs never gave any loans or money to Defendants. There is no testimony by the Plaintiffs that any Defendants asked for loans or money, that any Defendants promised to repay any loans or money to Plaintiffs on behalf of Ali and Sayed or that the Plaintiffs gave loans or money to any of the Defendants. It is respectfully submitted that Plaintiffs never gave any loans to Defendants because Defendants were not involved in Malabar and were not Plaintiffs' employers.

Moreover, after Malabar closed, Atul Kamath and other employees filed a complaint with the District Attorney's office against only Ali and Sayed. Plaintiffs failure to include Defendants in the Complaint with the District Attorney's office is a strong indicia that Defendants were not involved in these loans and were not even considered by Plaintiffs to be Plaintiffs' employers.

Based on the foregoing, there is no dispute that Defendants Raju, Varughese, Lobo, Mathews, and Mathew were not Plaintiffs' employers. In addition to the four factors under the Second Circuit economic realities test, many of the Plaintiffs do not even know the Defendants and the Plaintiffs that know Defendants saw Defendants sporadically when Defendants ate at Malabar. Moreover, the Defendants had full-time jobs during the relevant period and were merely at Malabar. It is sheer fantasy (and perhaps sanctionable) to argue that Defendants, who were merely customers of Malabar, were Plaintiffs employers under the FLSA and New York Labor Law.

**POINT IV**

**PLAINTIFFS FLSA CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF
LIMITATIONS AND THIS COURT SHOULD DECLINE TO EXERCISE
SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW AND
COMMON LAW CLAIMS**

Plaintiffs' employment at Malabar terminated in August 2003, and they did not file the
Complaint against Defendants until October 2005.  Plaintiffs' FLSA claims are barred by the
two year statute of limitations.  29 U.S.C. § 255.

The two year statute of limitations applies to non-willful violations of the FLSA.  See
Nesbitt v. Bun Basket, 780 F. Supp. 1151, 1152-53, (W.D. Mich. 1991).  A violation is only
willful if the defendant either knew his conduct violated the FLSA or showed reckless
disregard for whether his actions complied with the FLSA.  See McLaughlin v. Richland Shoe
Co., 486 U.S. 123 (1988).  There is no evidence that Defendants acted willfully toward
Plaintiffs (e.g. either knew or showed reckless disregard).  The Defendants lacked knowledge
that Plaintiffs were not allegedly being paid by Malabar.  They were merely customers of
Malabar.  Thus, the statute of limitations is two (2) years.

Once Plaintiffs' FLSA claims are dismissed, Defendants urge this Court to decline
supplemental jurisdiction over the remaining claims, to the extent that they survive the instant
motion.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98
L.Ed.2d 720 (1988); Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 119 (2d Cir.
2006); Brewster v. Nassau County, 349 F. Supp. 2d 540, 548 (E.D.N.Y. 2004); Xelo v.
Mavros, 2005 U.S. Dist. LEXIS 21588 (E.D.N.Y. 2005).

**POINT V**

**PLAINTIFFS ARE BARRED FROM BRINGING THIS ACTION AS THEY WAITED OVER TWO (2) YEARS TO BRING THEIR CLAIM TO THE DETRIMENT OF DEFENDANTS**

The defense of laches bars a claim when a defendant has suffered prejudice because of a plaintiff's unreasonable and inexcusable delay in bringing the claim.  Legislator 1357 Ltd. v. MGM, 452 F. Supp. 2d 382 (S.D.N.Y. 2006).  To make out a defense of laches, a defendant must show (1) that the plaintiff had knowledge of defendant's illegal act, (2) that plaintiff inexcusably delayed in taking action, and (3) that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights by its delay in bringing suit.  Fourth Toro Family Ltd. Pshp. v. PV Bakery, Inc., 88 F. Supp. 2d 188 (S.D.N.Y. 2000).

In the case at hand, Plaintiffs did not initiate this action until October 6, 2005, more than two years after their employment at Malabar terminated, which delay prejudiced Defendants.

With regard to the first factor – plaintiffs' knowledge of defendants' illegal act – Plaintiffs clearly knew that they were not properly paid wages during their employment at Malabar.  Further, Plaintiffs allege that Defendants are responsible for their unpaid wages.

With regard to the second factor – that plaintiffs inexcusably delayed in taking action – there was no excuse for waiting up to five years to file a Complaint for unpaid wages (some Plaintiffs began working in 2001 and allege that they were not paid proper wages during their entire tenure with Malabar).

With regard to the third factor - that defendants will be prejudiced by permitting Plaintiffs inequitably to assert their rights by delaying in bringing suit – Plaintiffs delay prejudiced Defendants' ability to file a cross-claim against Ali and Sayed and Malabar, who were responsible for paying Plaintiffs' wages.   Moreover, Plaintiffs' delay impeded

- 14 -

Defendants' ability to depose Ali and Sayed.  Additionally, if Defendants would have filed a

Complaint immediately when Malabar closed, Defendants would have conducted a thorough

search of the premises for any documents, including Malabar's payroll, before renovating the

premises.

## POINT VI

## ROYAL ARCADIA WAS NOT THE SUCCESSOR TO MALABAR PALACE, AND IS NOT LIABLE FOR PLAINTIFFS' ALLEGED UNPAID WAGES

Although the New York federal courts have not explicitly set forth the test for

successor liability under the FLSA, other courts have extended the test for establishing

successor liability in discrimination cases to the FLSA.  See Steinbach v. Hubbard, 51 F.3d

843 (9th Cir. 1995); Brock v. La Grange Equipment Co., 1987 U.S. Dist. LEXIS 14532 (D.

Neb. 1987).

This court has adopted a nine-factor test to determine whether imposing liability on a

successor in a discrimination case is appropriate.  See Abdel-Khalek v. Ernst & Young LLP,

1999 U.S. Dist. LEXIS 2369, * 7 (S.D.N.Y. 1999).  These factors include:

1. whether the successor employer had notice of the complaint;
2. the predecessor's ability to provide relief;
3. whether there had been substantial continuity of business operations;
4. whether the successor uses the same facility;
5. whether the successor uses the same workforce;
6. whether the successor uses the same or substantially the same supervisory personnel;
7. whether the same jobs exist under substantially the same working conditions;
8. whether the successor uses the same machinery equipment and methods of production; and
9. whether the successor produces the same product.

Id.

In the instant case, it is clear that Royal Arcadia is not a successor of Malabar.[4]

With regard to the first factor - whether the successor employer had notice of the complaint - Royal Arcadia did not have notice of the complaint until the complaint was served on Royal Arcadia.  Further, Royal Arcadia did not have notice that it would be liable for the acts of Malabar.  Thus, this factor weighs in favor of finding no successor liability.

With regard to the second factor – the predecessor's ability to provide relief – here, there is no evidence that Malabar and its owners, Sayed and Ali, cannot provide relief.  In fact, Plaintiffs have not even attempted to locate Ali and Sayed.  Thus, this factor also weighs in favor of finding no successor liability.

Factors three, four, five, six, and nine, which address whether there is a substantial continuity of business operations between Malabar and Royal Arcadia, weigh in favor of finding no successor liability.

With regard to the fourth factor - whether the successor uses the same facility - although Royal Arcadia occupies the same property as Malabar, it entered into a separate lease of the property with the landlord.  Moreover, the physical appearance of Malabar and Royal Arcadia are quite different.  The tables in Royal Arcadia are different than those at Malabar, Royal Arcadia has a bar, which Malabar did not have, Royal Arcadia bought new kitchen equipment, and its kitchen looks different than Malabar's kitchen, Royal Arcadia's sound system is different than Malabar's, and Royal Arcadia installed televisions which were not in Malabar.

With regard to the fifth factor - whether the successor uses the same workforce – Royal Arcadia did not employ the same workforce as Malabar.  In fact, only three individuals (Manjit Singh, Jose Santiago, and Charanjeet) worked at Malabar Palace and also Royal Arcadia.  With

---

[4] In as much as the Complaint alleges that the individual Defendants are successors, the same argument herein applies to them as well.

regard to Manjit Singh, he did not work at Royal Arcadia until one to one and a half years after Royal Arcadia opened, and he only worked at Royal Arcadia for three weeks.[5]  With regard to Santiago, he came into Royal Arcadia three weeks after it opened looking for a job as a dishwasher, and was hired.  It is unknown when Charanjeet began working at Royal Arcadia.

With regard to the sixth factor - whether the successor uses the same or substantially the same supervisory personnel - all of Royal Arcadia's supervisors were different than the supervisors of Malabar.  Sayed and Ali were the supervisors at Malabar; Raju, George Varughese, Larry, and Roy Mathew were the supervisors at Royal Arcadia.

With regard to the ninth factor - whether the successor produces the same product - the menus and the food were different at each restaurant.  Malabar served Indian and Southern food, and Royal Arcadia served only Indian food.

With regard to factors seven and eight (whether the same jobs exist under substantially the same working conditions, and whether the alleged successor uses the same machinery, equipment and methods of production), job duties of restaurant employees at all restaurants are the same, and all restaurants use the same types of machinery (e.g. stoves, ovens, etc.).  These factors should not be given strong weight since they would weigh in favor of finding no successor liability if any restaurant opened on the same premises as Malabar.  In any event, the machinery that was left on the premises by Malabar belonged to the landlord, and Royal Arcadia merely leased it.[6]

---

[5] It should be noted that Manjit Singh sought employment and, in fact, worked at Royal Arcadia.  Again, this is strong indica that Singh did not consider Defendants his employer at Malabar since it is highly doubtful that an individual would go back to work for the same employer who failed to pay him for wages and outstanding loans. Clearly, Singh makes a big distinction between Malabar Palace and Royal Arcadia.

[6] Sang, the landlord of the premises on which Malabar and Royal Arcadia were located, testified that pursuant to what his attorney told him, there was a Supplemental Rider to the lease wherein Defendants agreed to pay $75,000 in back rent for Malabar.  Ghoing Jon Sang Dep. at 23, 44-45.  However, the Supplemental Rider, does not state that Defendants would pay $75,000 in back rent for Malabar. Rather, the Supplemental Rider contains an agreement between Royal Arcadia and Sang for Royal Arcadia to lease the equipment on the premises for $45,000. In any event, the conversation between Sang and his attorney regarding Defendants' payment of Malabar's back rent is hearsay, and is inadmissible.  See F.R.E. 802.

Thus, the factors weigh overwhelmingly in favor of no successor liability.  Therefore, Royal Arcadia should not be liable for Plaintiffs' unpaid wages.

**POINT VII**

**DEFENDANTS DID NOT DEFRAUD PLAINTIFFS**

In this case, Plaintiffs A. Kaur, Singh, and Baljinder assert that Defendants made misrepresentations to them that Defendants would repay Plaintiffs' backpay wages and employee loans[7], that Defendants would use the employee loans to improve Malabar, that Defendants intended to repay Plaintiffs back wages and employee loans, that Defendants did not intend to perform such promises, that Plaintiffs reasonably relied on Defendants' material misrepresentations, and that Plaintiffs suffered damages as a result.

In order to establish a claim of fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.  <u>Lama Holding Co. v. Smith Barney Inc.</u>, 88 N.Y.2d 413, 421 (1996).

<u>**Unpaid Loans**</u>

There are no allegations and there is no evidence that Defendants had any direct conversations with A. Kaur, Singh, and Baljinder regarding loans and the repayments thereof. In fact, A. Kaur, Singh, and Baljinder do not even know most of the Defendants, and they never spoke to the Defendants.  A. Kaur does not know Varughese, Lobo, Mathews, or Mathew, and never spoke with Raju.  Baljinder does not know Raju and Mathews and never spoke with Varughese, Lobo, or Mathew.  Singh does not know Varughese, Mathews, or

---

[7] The fraud claim that Avtar Kaur, Manjit Singh, and Baljinder Kaur were defrauded with respect to repayment of loans made to Ali and Sayed does not apply to the other Plaintiffs since the claim was only made on behalf of Avtar Kaur, Manjit Singh, and Baljinder Kaur.

Mathew, and never spoke with Raju or Lobo.  Since A. Kaur, Singh, and Baljinder either did not know the Defendants or never spoke with the Defendants when they worked at Malabar, the Defendants could not have made representations (or misrepresentations) to A. Kaur, Singh, and Baljinder.

Plaintiffs also allege that Defendants are liable for the loans under an agency theory. Specifically, Plaintiffs allege that Sayed acted as Defendants' agent in obtaining the loans. However, under the facts and the law, this theory must also be dismissed.

Sayed did not have actual authority to act on Defendants' behalf when he made alleged misrepresentations to Plaintiffs.  Actual authority is the power of the agent to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestations to him.  Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, 69 (2d Cir. 2003).  Such authority may be express or implied, but in either case it exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act.  Id.  In this case, Defendants never gave authority to Sayed to accept loans from Plaintiffs on their behalf.  Thus, Sayed did not have actual authority.

Moreover, Sayed did not have apparent authority to act on Defendants' behalf when he made alleged misrepresentations to Plaintiffs.  Apparent authority arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have an act done on his behalf by the person purporting to act for him.  Id.  The record is clear that Defendants never told Plaintiffs that Sayed was their agent.  Moreover, since A. Kaur, Singh, and Baljinder testified that they did not speak to Defendants about providing loans and being repaid for same, Defendants could not have communicated to them that Sayed had authority to bind Defendants.

It should be noted that Varughese, Raju, Lobo, and Mathews, like the Plaintiffs, provided money to Ali and Sayed.[8]  In return, Ali promised Varughese a 20-30% rate of return on the money.  There was never any ownership interest conveyed to Defendants in return for the loans.  Ali and Sayed were the sole and equal owners of Malabar.

Moreover, there is no evidence that Sayed made any misrepresentation about the purpose for the loans, i.e. for rent or capital improvements for Malabar.  Accordingly, no valid fraud claim can exist since Plaintiffs cannot establish any misrepresentation.  Therefore,  A. Kaur's, Singh's, and Baljinder's fraud claim regarding the loans should be dismissed.

**Unpaid Wages**

FLSA claims cannot be recast as duplicative common law claims.  See Chen v. St. Beat Sportswear, Inc., 364 F. Supp. 2d 269, 293 (E.D.N.Y. 2005)(dismissing negligence actions that were duplicative of FLSA action); Petras v. Johnson, 1993 U.S. Dist. LEXIS 8464 *11 (S.D.N.Y. 1993)(dismissing fraud claim that the defendants knowingly and with intent to misrepresent and deceive the plaintiff made false representations to plaintiff to lead him to believe that he was not entitled to overtime compensation, because defendants' alleged fraud lay simply in concealing plaintiff's rights under the FLSA and the FLSA provides the exclusive remedy for overtime payments).

In the case at hand, Plaintiffs' fraud claim for unpaid wages is duplicative of Plaintiffs' claims for unpaid wages pursuant to the FLSA and New York Labor Law, and therefore, it should be dismissed.

---

[8] Raju, Lobo, and Mathews did not directly provide the money to Ali and Sayed, but rather merely gave the money to Varughese to invest for them.  Varughese gave the money that he received from the Defendants to Ali to build a house in India.

**POINT VIII**

**DEFENDANTS DID NOT ENTER INTO A CONTRACT WITH PLAINTIFFS TO REPAY BACK WAGES OR TO REPAY LOANS**

Plaintiffs allege that they had a contract with Defendants and that Defendants breached the contract.  Specifically, Plaintiffs allege that Sayed (as Defendants' agent): (1) promised to pay Plaintiffs back wages, failed to meet their promise, and therefore breached the contract; and (2) entered into an oral agreement with Plaintiffs to receive loans from Plaintiffs and to repay Plaintiffs for said loans within one year from the time that the loans were made, with a reasonable rate of return, failed to repay the loans, and therefore breached the contract. However, as discussed *supra*, Sayed was not Defendants' agent and Defendants were not Sayed's principal.

        **1.**        **Back Wages**

The FLSA preempts common law claims where the claims are grounded in the same facts.  See Chen v. St. Beat Sportswear, Inc., 364 F. Supp. 2d 269 (E.D.N.Y. 2005); Petras v. Johnson, 1993 U.S. Dist. LEXIS 8464 (S.D.N.Y. June 22, 1993), *supra*.

In this case, Defendants' alleged promise to pay Plaintiffs' wages is grounded in the same facts as Plaintiffs' FLSA action to recover unpaid wages.  Therefore, Plaintiffs' breach of contract claim regarding unpaid wages should be dismissed as preempted by the FLSA.

Assuming *arguendo* that the FLSA does not preempt Plaintiffs' breach of contract action, as discussed *supra*, Sayed was not Defendants' agent, and did not have authority to act on Defendants' behalf when he promised to pay Plaintiffs' back wages.  The record is completely barren of any evidence that Sayed ever acted on behalf of Defendants.

        **2.**        **Employee Loans**

As discussed *supra*, Plaintiffs do not allege how Defendants were Sayed's principal, or how Sayed was Defendants' agent for purposes of obtaining these loans.

Moreover, Defendants never received loans or money from the Plaintiffs.  In fact, Defendants do not even know if Malabar employees gave loans to Ali and Sayed.  Again, the record is barren of any fact that Defendants were in any way involved in the loans processed by Ali and Sayed.  Defendants did not enter into any contract with the Plaintiffs to repay loans that Plaintiffs made to Ali and Sayed.

Further, Plaintiffs failed to even establish that the loans given by Plaintiffs to Ali and Sayed were for Malabar, and not for Ali and Sayed's personal use.  The alleged oral contracts entered into by Ali and Sayed were entered into on behalf of Ali and Sayed (and possibly Malabar), and not on behalf of Defendants.

Even if an agreement existed between A. Kaur, Singh, and Baljinder and Defendants, the oral agreement allegedly reached by the parties is unenforceable because it violates the statute of frauds.  Under N.Y. GEN. OBLIG. LAW § 5-701(a)(1), any agreement which is not in writing and signed by the party against whom enforcement is sought is void if, by its terms, it "is not to be performed within one year from the making thereof."  See Sheehy v. Clifford Chance Rogers & Wells LLP, 3 N.Y.3d 554, 559-60 (2004); Stillman v. Kalikow, 802 N.Y.S.2d 714, 716 (2d Dep't 2005).  Plaintiffs have failed to provide admissible evidence that the repayment of the loans was to be complete within one year.  Therefore, the alleged contract violates the statute of frauds.

Lastly, any statements by Ali and Sayed about these loans are hearsay and are inadmissible under F.R.E. 802.

## POINT IX
## DEFENDANTS WERE NOT UNJUSTLY ENRICHED

Plaintiffs also allege that Defendants somehow enriched themselves as a result of Malabar failing to repay Plaintiffs for the loans and for failing to repay Plaintiffs' back wages. This argument fails for several reasons.

First, where an adequate remedy at law exists, a court will not permit a claim in equity. Bongat v. Fairview Nursing Care Ctr., Inc., 341 F. Supp. 2d 181, 188 (E.D.N.Y. 2004). Equity relief has been typically denied in a proceeding seeking restitution on a theory of unjust enrichment where a remedy at law, typically an action for damages, is adequate. Id. (dismissing plaintiffs' claims for unjust enrichment and quantum meruit because plaintiffs' FLSA claim and breach of contract claim would provide an adequate remedy at law). Thus, Plaintiffs' actions for unjust enrichment and quantum meruit should be denied.

Second, in order to prevail on a claim of unjust enrichment, a plaintiff must establish that: (1) the defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances are such that equity and good conscience require restitution. Bongat at 188.

To establish a claim for quantum meruit under New York law, a plaintiff must show: (1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services. Id.

In the case at hand, Defendants did not receive money belonging to the Plaintiffs. These loans were given to Ali and Sayed. There is no evidence that Plaintiffs lent money to Defendants. Since Defendants did not receive money from Plaintiffs, they did not benefit at Plaintiffs' expense.

Moreover, as discussed *supra*, Defendants were not Plaintiffs' employers at Malabar. Therefore, Plaintiffs did not confer a benefit of labor on Defendants, and Defendants were not enriched.

## CONCLUSION

Ali and Sayed, not Defendants, were Plaintiffs' employers at Malabar. Most of the Plaintiffs do not even know Defendants. Defendants were merely customers at Malabar who

occasionally went there to eat.  Moreover, Royal Arcadia is not a successor of Malabar.  Royal Arcadia merely opened up a new restaurant at the premises where Malabar was located.  Additionally, any promises made to Plaintiffs regarding payment of wages or repayment of loans, were made by Ali and Sayed, who did not have the authority to bind Defendants.  At no point did Plaintiffs believe that Defendants were bound by Ali's and Sayed's promises.  As such, Defendants' summary judgment motion should be granted with respect to all claims alleged in the Complaint.

Dated:  Lake Success, New York
         May 7, 2007

                                   Respectfully submitted,

                                   MILMAN & HEIDECKER

                                   /s/ Joseph M. Labuda
                                   Joseph M. Labuda (JL 5213)
                                   Jamie S. Felsen (JF 7876)
                                   Attorneys for Defendants Royal
                                   Arcadia Palace, Inc., George Raju
                                   Varghese, George Varughese, Roy
                                   Mathew, Thomas Mathews, and
                                   Carmo Lobo
                                   3000 Marcus Ave., Suite 3W3
                                   Lake Success, NY  11042
                                   (516) 328-8899