UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
BALJINDER KAUR, ATUL KAMATH,               ECF CASE
AVTAR KAUR, BALJEET KAUR,
VIMLA PATEL, VINITA ARORA, MANJIT      05-CV-4725 (NGG)(JO)
SINGH, and KAMEENA BAMBAM,

                     Plaintiffs,

        -against-

ROYAL ARCADIA PALACE, INC., and
GEORGE RAJU VARGHESE, GEORGE
VARGHESE, ROY MATHEWS, THOMAS
MATHEWS, CARMO LOBO, and TARIQ
LONGI, d/b/a MALABAR PALACE

                     Defendants.
--------------------------------------------------------X

DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT

Joseph M. Labuda (JL 5213)
Jamie S. Felsen (JF 7876)
Milman & Heidecker
Attorneys for Defendants
3000 Marcus Avenue, Suite 3W3
Lake Success, New York 11042
(516) 328-8899

Date of Service: August 17, 2007

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ..........................................................................................................1

POINT I ..................................................................................................................1
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
IS LITTERED WITH MISLEADING STATEMENTS, MISREPRESENTATIONS AND
MISCHARACTERIZATIONS OF THE RECORD.......................................................1

POINT II .................................................................................................................4
DEFENDANTS ARE NOT LIABLE TO PLAINTIFFS UNDER THE FLSA ...........................4
   A.   Plaintiffs are unable to establish that the individual defendants were Plaintiffs'
Employers under the FLSA and New York Labor Law ............................................4
   B.   Royal Arcadia is not liable to Plaintiffs under the FLSA because it was not a
successor to Malabar.......................................................................................11
   C.   Plaintiff's FLSA claims are barred by the statute of limitations ......................13

POINT III................................................................................................................14
THE INDIVIDUAL DEFENDANTS ARE NOT PERSONALLY LIABLE TO
PLAINTIFFS FOR THE NEW YORK STATE FRAUD AND BREACH OF
CONTRACT CLAIMS .............................................................................................14

POINT IV ...............................................................................................................17
ROYAL ARCADIA IS NOT A SUCCESSOR TO MALABAR UNDER NEW YORK
LAW ....................................................................................................................17
   A.   Royal Arcadia did not expressly or impliedly agree to assume Malabar's debts ...............17
   B.   Royal Arcadia was not a mere continuation of Malabar...........................................20
   C.   Plaintiffs failed to plead with particularity that there were fraudulent transactions
made by Malabar and Royal Arcadia, and in any case, there were no such fraudulent
transactions .....................................................................................................20
   D.   There was no de facto merger between Malabar and Royal Arcadia ................................22

POINT V ................................................................................................................23
DEFENDANTS DID NOT DEFRAUD PLAINTIFFS A. KAUR, SINGH, AND
BALJINDER .........................................................................................................23

POINT VI................................................................................................................25
PLAINTIFFS' FRAUD AND BREACH OF CONTRACT CLAIMS FOR UNPAID
WAGES ARE PREEMPTED BY THE FLSA AND TO THE EXTENT THAT
PLAINTIFFS ARE DENIED DAMAGES UNDER THE FLSA, THIS COURT DOES
NOT HAVE JURISDICTION TO DECIDE PLAINTIFFS' STATE CLAIMS .........................25

POINT VII..............................................................................................................25
PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF ......................................25

CONCLUSION.......................................................................................................26

**TABLE OF AUTHORITIES**

<u>Cases</u>

<u>200 Genesee St. Corp. v. City of Utica</u>,
       6 N.Y.3d 761 (2006) ........................................................ 18

Abdel-Khalek v. Ernst & Young LLP,
       1999 U.S. Dist. LEXIS 2369 (S.D.N.Y. 1999) ................................ 11

<u>Baker v. Dorfman</u>,
       2000 U.S. Dist. LEXIS 10142 (S.D.N.Y. July 20, 2000) ..................... 22

<u>Brewster v. Nassau County</u>,
       349 F. Supp. 2d 540 (E.D.N.Y. 2004) ...................................... 14

<u>Briarpatch Ltd., L.P. v. Frankfurt, Garbus, Klein & Selz, P.C.</u>,
       787 N.Y.S.2d 267 (App. Div. 1st Dep't. 2004) ............................. 15

<u>Burke v. Hamilton Installers, Inc.</u>,
       2004 U.S. Dist. LEXIS 18021 (W.D.N.Y. 2004) ............................. 25

<u>Carnegie-Mellon Univ. v. Cohill</u>,
       484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ................... 14, 25

<u>EED Holdings v. Palmer Johnson Acquisition Corp.</u>,
       228 F.R.D. 508 (S.D.N.Y. 2005) .......................................... 20

<u>Guardado v. Nassau County Corr. Facility</u>,
       2005 U.S. App. LEXIS 28333 (2d Cir. 2005) ................................ 1

<u>Harris v. Adejumo</u>,
       830 N.Y.S. 2d 561 (App. Div. 2nd Dep't. 2007) ........................... 15

<u>Heights v. U.S. Electrical Tool Co.</u>,
       525 N.Y.S.2d 653  (App. Div. 2nd Dep't. 1988) ........................... 12

<u>Herman v. RSR Sec. Servs.</u>,
       172 F.3d 132 (2d Cir. 1999) .............................................. 6

<u>In re Currency Conversion Fee Antitrust Litig.</u>,
       265 F. Supp. 2d 385 (S.D.N.Y. 2003) ..................................... 20

<u>Kidz Cloz, Inc. v. Officially for Kids, Inc.</u>,
       320 F. Supp. 2d 164 (S.D.N.Y. 2004) ..................................... 16

Kolari v. New York-Presbyterian Hosp.,
      455 F.3d 118 (2d Cir. 2006)........................................................................ 14

Lerner v. Fleet Bank, N.A.,
      459 F.3d 273 (2d Cir. 2006)................................................................. 21, 23

Levy v. Aetna Cas. & Sur. Co.,
      658 N.Y.S.2d 939 (Sup. Ct. Nassau County, 1997) ....................................... 18

McI Llc v. Rutgers Cas. Ins. Co.,
      2007 U.S. Dist. LEXIS 59241 (S.D.N.Y. 2007).............................................. 1

New Paradigm Software Corp. v. New Era of Networks Inc.,
      2002 U.S. Dist. LEXIS 23753 (S.D.N.Y. 2002).......................................... 18

People's Ins. Co. of China v. Independent Radiator Sales, Inc.,
      1999 U.S. Dist. LEXIS 2979 (S.D.N.Y. 1999)........................................ 20, 21

Petras v. Johnson,
      1993 U.S. Dist. LEXIS 8464  (S.D.N.Y. 1993)........................................... 25

Phipps v. Comprehensive Cmty. Dev. Corp.,
      2005 U.S. Dist. LEXIS 1672 (S.D.N.Y. 2005).............................................. 17

Rodriguez v. Potter,
      2005 U.S. Dist. LEXIS 45206 (S.D. Tex. 2005) ........................................... 14

Sitchenko v. Di Resta,
      512 F. Supp. 758 (E.D.N.Y. 1981) ............................................................ 17

South Rd. Assocs., LLC v. IBM,
      4 N.Y.3d 272 (2005)................................................................................ 18

Toles v. Schillaci,
      2006 U.S. Dist. LEXIS 96178 (W.D.N.Y. 2006) ........................................... 14

United States v. Aponte,
      31 F.3d 86 (2d Cir. 1994) ......................................................................... 17

Wolfslayer v. Ikon Office Solutions, Inc.,
      2004 U.S. Dist. LEXIS 22625  (E.D. Pa. 2004) ........................................... 14

Xelo v. Mavros,
      2005 U.S. Dist. LEXIS 21588 (E.D.N.Y. 2005)............................................ 14

**Statutes**

F.R.E. 802 .................................................................................................................. 7, 8, 11, 19

Fed.R.Civ. Proc 9(b) ................................................................................................. 20, 23

Local Rule 56.1(d) .......................................................................................................... 1

## PRELIMINARY STATEMENT

Plaintiffs' memorandum in opposition to Defendants' motion for summary judgment ("memorandum in opposition") contains countless misleading statements, misrepresentations and mischaracterization of testimony and fails to establish any material facts in dispute.

At the end of the day, Plaintiffs cannot establish that Defendants are responsible for any unpaid wages owed by Malabar.

## ARGUMENT

### POINT I

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT IS LITTERED WITH MISLEADING STATEMENTS, MISREPRESENTATIONS AND MISCHARACTERIZATIONS OF THE RECORD

In a desperate attempt to raise genuine issues of material fact, Plaintiffs' citations to the record in their memorandum in opposition are misleading and contain numerous misrepresentations and mischaracterizations. Moreover, Plaintiffs dispute some of Defendants' statements of material facts without providing admissible evidence, in violation of Local Rule 56.1(d).[1]  Below is a summary of some instances in which Plaintiffs have misrepresented and mischaracterized the record in their Rule 56.1 Counter-SOF.

- ¶ 68[2] – Plaintiffs state that Plaintiff Manjit Singh ("Singh") knows the names "George, Thomas, and Roy" and that he thinks George was a partner at Malabar and that Thomas and Roy could have been his bosses. Yet, the testimony cited by Plaintiffs states that Singh did not know Mathew and Mathews. Singh Dep. at 100. Moreover, Plaintiffs state that Singh testified that he thinks Varughese was a partner at Malabar, but Singh's testimony on this issue was that he thinks Varughese was a partner at <u>Royal Arcadia</u>.

- ¶17 –Plaintiffs admit that Sayed Hussein ("Sayed") and Mohammed Ali Kutty ("Ali"), the owners of Malabar gave Plaintiff Avtar Kaur ("A. Kaur") instructions, but add that "other owners gave Avtar instructions."   The only other "owner" to which the cited authority refers as giving A. Kaur instructions is Longi, who is not moving for summary judgment.

---

[1] Local Rule 56.1(d) provides that "[e]ach statement by the movant or opponent … including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)."  Conclusory statements or mere allegations are not sufficient to defeat a summary judgment motion. <u>Guardado v. Nassau County Corr. Facility</u>, 2005 U.S. App. LEXIS 28333 *3 (2d Cir. 2005); <u>McI Llc v. Rutgers Cas. Ins. Co.</u>, 2007 U.S. Dist. LEXIS 59241 (S.D.N.Y. 2007).

[2] "¶__" refers to specific paragraphs in Plaintiffs' 56.1 Counter-SOF.

Any reference to Longi as an employer of Plaintiffs is irrelevant to the instant motion and should not be considered by the Court in deciding this motion.

- ¶30 – Plaintiffs admit that Plaintiff Baljeet Kaur ("Baljeet") complained to Ali and Sayed when she was not paid wages, but add that Plaintiffs complained to Defendants Raju and Varughese that they were not being paid. Paragraph 30 specifically referred to whether or not Baljeet complained to Sayed and Ali, yet Plaintiffs inexplicably expanded the statement to refer to whether all Plaintiffs complained to all Defendants. In any event, Plaintiffs have not provided admissible evidence that Baljeet complained to Defendants that she was not paid wages.

- ¶57 – In response to Defendants' assertion that Kameena Bambam ("Bambam") does not know Mathews, Plaintiffs states that Bambam does not know "Roy" personally…" However, "Mathews" refers to Thomas Mathews, not Roy Mathew. Bambam testified that she does not know Thomas Mathews. Bambam Dep. at. 59.

- ¶83-84 – Plaintiffs dispute Defendants' statement that Royal Arcadia was incorporated for the purpose of going into the Indian sweets business. However, the evidence provided by Plaintiffs does not dispute Defendants' statement. Contrary to what Plaintiffs state the cited testimony says, the testimony says that Royal Arcadia made sweets as soon as it opened. Mathews Dep. at 25. When asked the purpose for which Royal Arcadia leased the restaurant, Albert Sang ("Sang"), the landlord testified "whatever in the lease." Sang Dep. at 22.

- ¶102 – Plaintiffs state that Raju went to Malabar at least six times a month. However, the testimony relied upon states that "[Raju] used to be there at least <u>maybe</u> six times in a month <u>but not very sure</u>. <u>Sometimes maybe four times</u> a month."

- ¶104 – Plaintiffs state that Raju discussed wages with Malabar employees. However, the testimony relied upon merely refers to discussions that Plaintiff Atul Kamath ("Kamath") had with Raju about wages after Malabar closed, which is unresponsive to Defendants' statement.

- ¶107 – Plaintiffs dispute Defendants' statement that Raju does not know the wages that employees of Malabar, Royal Arcadia, or Namaskar were paid, but the testimony relied upon by Plaintiffs does not support its position.

- ¶108 – Plaintiffs deny that the only interaction that Kamath had with Raju at Malabar was serving him and his family food, but in ¶ 79, Plaintiffs admitted that the only interaction that Kamath had with Raju and Varughese at Malabar was serving them and their families food.
- ¶113 – Plaintiffs dispute Defendants' statement that Singh saw Raju at Malabar once every two months, but failed to provide any evidence disputing the statement.

- ¶126 – Plaintiffs dispute that Varughese did not maintain Plaintiffs' employment records and assert that when Malabar employees sought employment related documents such as their W2s and 1099 tax forms, they were instructed to speak with Varughese. Yet, Kamath testified that when he asked Ali and Sayed for W2 and 1099 forms, they told him that they (Ali and Sayed) would speak to Varughese because Varughese takes care of that. Ali and Sayed did not instruct Kamath to speak to Varughese. It is undisputed that Varughese was Malabar's tax preparer, and therefore Ali and Sayed would need to confer with him about such issues.

- ¶130 – Plaintiffs dispute Defendants' statement that Varughese does not know any of the Plaintiffs except Kamath but Plaintiffs failed to provide any evidence disputing the statement.

- ¶136 – Plaintiffs dispute Defendants' statement that the only interaction that Kamath had with Varughese <u>at Malabar</u> was serving him and his family food, but the evidence that Plaintiffs provide merely shows that Kamath discussed wages with Kamath outside of Malabar <u>after Malabar closed</u>.

- ¶148 – Plaintiffs dispute Defendants' statement that Lobo did not know the hours of operation of Malabar, but Plaintiffs failed to provide any evidence disputing the statement.

- ¶160 - Plaintiffs dispute Defendants' statement that Mathews was at Malabar less than five times, but Plaintiffs failed to provide any evidence disputing the statement.

- ¶163 - Plaintiffs dispute Defendants' statement that Mathews did not have the power to hire and fire employees at Malabar, but Plaintiffs failed to provide any evidence disputing the statement.

- ¶164 - Plaintiffs dispute Defendants' statement that Mathews did not direct employees at Malabar, but Plaintiffs failed to provide any evidence disputing the statement.

- ¶165 - Plaintiffs dispute Defendants' statement that Mathews did set schedules or wages of employees at Malabar, but Plaintiffs failed to provide any evidence disputing the statement.

- ¶168 - Plaintiffs dispute Defendants' statement that Mathews gave Varughese over $15,000 to invest in an Indian sweets store which became Royal Arcadia. However, the evidence provided by Plaintiffs does not dispute Defendants' statement. Contrary to what Plaintiffs state the cited testimony says, Mathews testified that Royal Arcadia made sweets as soon as it opened. Mathews Dep. at 25. Furthermore, when asked the purpose for which Royal Arcadia leased the restaurant, Sang simply testified "whatever in the lease." Sang Dep. at 22. Plaintiffs citations do not support their assertion contained in response to ¶168.

- ¶171 - Plaintiffs dispute Defendants' statement that Plaintiff Baljinder Kaur ("Baljinder") did not know Mathews and states that "Baljinder knew Roy." However, Roy refers to Roy Mathew, not Thomas Mathews.

- ¶180 - Plaintiffs dispute Defendants' statement that Mathew had never been to Malabar until August 2003 and had never met Ali and Sayed until August 2003 and state that Mathew was a partner of Malabar for 8 years. However, the evidence provided by Plaintiffs does not support same. Moreover, in Plaintiffs' Additional Statement of Facts, paragraph ¶ 222, Plaintiffs state that Mathew met Varughese in June 2003, which makes it highly unlikely that Mathew was a partner of Malabar for <u>8 years</u> and Varughese was his partner.

- ¶182 - Plaintiffs dispute Defendants' statement that Mathew did not have the power to hire and fire employees at Malabar, but Plaintiffs failed to provide any evidence disputing the statement.

- ¶183 - Plaintiffs dispute Defendants' statement that Mathew did not direct employees at Malabar, but Plaintiffs failed to provide any evidence disputing the statement.

- ¶189 - Plaintiffs dispute Defendants' statement that Varughese told Mathew that he wanted to start a sweets business that Mathew could run for him, but Plaintiffs failed to provide any evidence disputing the statement.

- ¶194 – Plaintiffs dispute Defendants' statement that Singh does not know Mathew, but the evidence Plaintiffs provided does not support its position.  The evidence refers to Thomas Mathews, not Roy Mathew.

- ¶197 - Plaintiffs dispute the statement that Mathew worked at Royal Arcadia from December 2004 until December 2006, but Plaintiffs' response is not responsive to Defendants' statement.

- ¶258-260 – Plaintiffs state that (1) Defendants told Baljinder that her money would be used to renovate and improve Malabar; (2) Defendants told Baljinder and Singh that the money they loaned Defendants would be used to expand the business to include dinner party services; and (3) Defendants told Baljinder and A. Kaur that some of their money would be used to pay a final month's rent.  However, the evidence provided by Plaintiffs in support of this statement states that Ali and Sayed (not Defendants) made these representations.  See Baljinder Dep. at 92-93, 124, 126, Singh Dep. at 46, A. Kaur Dep. at 81-82, 86, 88, 99.

- ¶263 – Plaintiffs state that Sayed advised Plaintiffs that their loans were not enough to make them partners.  However, to the contrary, the evidence provided by Plaintiffs in support of this statement says that after Manjit gave Sayed and Ali $20,000, Ali and Sayed told Manjit that they would give Manjit a small portion of the business.  Singh Dep. at 62.

- ¶288 – Plaintiffs assert that after Ali and Sayed fled, Defendants promised Plaintiffs they would be paid.  However, the evidence provided by Plaintiffs in support of this statement does not say that the moving Defendants promised Plaintiffs would be paid.  Even assuming that the moving Defendants made the statement, such a statement is not a promise that Plaintiffs would be paid <u>by Defendants</u>.

## POINT II

### DEFENDANTS ARE NOT LIABLE TO PLAINTIFFS UNDER THE FLSA

#### A.  Plaintiffs are unable to establish that the individual defendants were Plaintiffs' Employers under the FLSA and New York Labor Law

Plaintiffs have not refuted Defendants' assertions that Defendants did not have the authority to hire and fire Plaintiffs, hired Plaintiffs, supervised and controlled Plaintiffs' work schedules and conditions of employment, determined the rate and method of Plaintiffs' pay, and maintained Plaintiffs' employment records at Malabar.  In fact, as discussed below, Plaintiffs admit that Defendants had no role in any of these responsibilities at Malabar.

Plaintiffs do not dispute that Ali and Sayed hired A. Kaur, that Ali and Sayed set her schedule, set her wages, and gave her instructions.  Plaintiffs' Counter-SOF ¶ 16.  Although

- 4 -

Plaintiffs assert that Mathew also interviewed A. Kaur and set her schedule and wages (Plaintiffs' Counter-SOF ¶ 16), Plaintiffs also assert that Mathew did not meet Varughese, an alleged owner of Malabar until June 2003 (more than one year after A. Kaur was hired by Malabar). Plaintiffs' Counter-SOF ¶ 222. It defies reason that since 1999, Varughese and Mathew were partners of Malabar and also employers of the employees that worked at Malabar, but Mathew and Varughese did not know each other until June 2003. Defendants agree that Mathew and Varughese did not meet each other until June 2003. Therefore, before June 2003, it was impossible for Mathew and Varughese both to have been an owner or partner of Malabar and an employer of the employees of Malabar.

Plaintiffs do not dispute that Baljeet interviewed with and was hired by Sayed, that Sayed set Baljeet's work schedule and salary, and that Sayed instructed Baljeet on tasks that she needed to perform. Plaintiffs' Counter-SOF ¶28-29. Since Plaintiffs do not assert that any of the Defendants performed any of these functions (as they did in Plaintiffs' Counter-SOF ¶ 16 with respect to Mathew interviewing A. Kaur), none of the Defendants, in fact, performed any of these functions with respect to Baljeet.

Plaintiffs do not dispute that Baljinder interviewed with and was hired by Ali and Sayed, that Ali and Sayed set Baljinder's work schedule and salary, and that Ali and Sayed instructed Baljinder on tasks that she needed to perform. Plaintiffs' Counter-SOF ¶36. Since Plaintiffs do not assert that any of the Defendants performed any of these functions (as they did in Plaintiffs' Counter-SOF ¶ 16 with respect to Mathew interviewing A. Kaur), none of the Defendants, in fact, performed any of these functions with respect to Baljeet.

Plaintiffs do not dispute that Bambam interviewed with and was hired by Ali and Sayed, that Ali set Bambam's work schedule and salary, and that Ali and Sayed instructed Bambam on tasks that she needed to perform. Plaintiffs' Counter-SOF ¶49-52. Since Plaintiffs do not assert that any of the Defendants performed any of these functions (as they did in Plaintiffs' Counter-SOF ¶ 16 with respect to Mathew interviewing A. Kaur), none of the Defendants, in fact, performed any of these functions with respect to Bambam.

Plaintiffs do not dispute that Singh interviewed with and was hired by Ali and Sayed, that Ali and Sayed set Singh's work schedule and salary, and that Ali and Sayed instructed Singh on tasks that he needed to perform.  Plaintiffs' Counter-SOF ¶60-63.  Since Plaintiffs do not assert that any of the Defendants performed any of these functions (as they did in Plaintiffs' Counter-SOF ¶ 16 with respect to Mathew interviewing A. Kaur), none of the Defendants, in fact, performed any of these functions with respect to Singh.

Plaintiffs do not dispute that Kamath interviewed with and was hired by Ali and Sayed, that Ali and Sayed set Singh's work schedule and salary, and that Ali and Sayed instructed Singh on tasks that he needed to perform.  Plaintiffs' Counter-SOF ¶73-75.  Since Plaintiffs do not assert that any of the Defendants performed any of these functions (as they did in Plaintiffs' Counter-SOF ¶ 16 with respect to Mathew interviewing A. Kaur), none of the Defendants, in fact, performed any of these functions with respect to Kamath.

In fact, Plaintiffs acknowledge that they cannot establish any of the four factors under the economic realities test.  Instead, they assert that there are factors other than the four factors specifically delineated under the economic realities test that establish that Defendants were their employers.[3]  However, Plaintiffs' failure to establish any of the four factors under the economic realities test is a strong indicia that Defendants were not Plaintiffs' employers at Malabar.

In any event, as discussed below, the evidence provided by Plaintiffs that goes beyond the four factors under the economic realities test does not raise any issues of material fact regarding Defendants' employer status under the FLSA and New York Labor Law.  The evidence does not establish that Defendants "possessed the power to control the workers in question…"  Herman v. RSR Sec. Servs., 172 F.3d 132, 139 (2d Cir. 1999).

### 1.    Raju was not Plaintiffs' employer

---

[3] Throughout their memorandum in opposition, Plaintiffs refer to themselves collectively when describing specific circumstances involving Defendants.  However, Plaintiffs do not provide admissible evidence indicating that each Plaintiff was involved in each incident.  Thus, when Plaintiffs refer to "Plaintiffs", to the extent that Plaintiffs do not provide admissible evidence from each Plaintiff to support their proposition, they are misleading the Court, and are violating Local Rule 56.1.  Plaintiffs are merely grouping together sporadic incidents that allegedly occurred to one Plaintiff and are portraying the incidents as occurring to all Plaintiffs.

Plaintiffs assert that Raju was introduced to Plaintiffs as one of their bosses, that he said "this is my restaurant", that he told Singh that he gave $400,000 for Malabar, and that Plaintiffs were instructed to "take care of him well."[4]  Plaintiffs' testimony that Raju was introduced to them as their boss is inadmissible hearsay evidence because Plaintiffs' testified that Ali and Sayed told Plaintiffs that Raju was their boss.  Singh Dep. at 60-61.  See F.R.E. 802[5]  Moreover, to the extent that Raju (and any other Defendants) was introduced to Plaintiffs as a partner of Ali and Sayed, as will be discussed in further detail under Point III.B., it was not unreasonable for Raju to not object.  Even assuming that Raju was introduced to Plaintiffs as their boss and/or partner, such evidence does not tend to establish employer status.  As discussed *supra*, Plaintiffs agree that Raju did not take part in any of the daily functions of Malabar (the four factors under the economic realities test).  If Raju (or any of the other Defendants) was, in fact, Plaintiffs' employer, Raju (and the other Defendants) would have been involved in at least some of the daily tasks in which an employer is ordinarily involved (e.g. hiring, giving orders, setting schedules, setting wages, etc.).  The term "boss" does not equate to "employer."  For example, a boss can refer merely to an owner of a company.  Owners are not necessarily employers under the FLSA.  If Raju lent money to Malabar, it does not mean that he performed the function of an "employer" of Malabar or that he was an owner of Malabar.[6]  In fact, Plaintiffs admit that Raju was rarely at Malabar.  A. Kaur and Baljeet saw Raju at Malabar once a month and they never spoke.  Plaintiffs' Counter-SOF ¶24, 32.  Singh saw Raju once every two months "because he worked in the kitchen."  Id. ¶67.[7]  Plaintiffs deny that Baljinder does not know Raju to the extent that Raju and Sam are the same person.  Plaintiffs' Counter-SOF ¶ 41.  However, since Kamath testified that "Sam" is Mathew, Plaintiffs thereby admit that Baljinder does not know Raju.  Moreover, Plaintiffs admit that the only interaction Kamath had with Raju at

---

[4] In support of these statements, Plaintiffs provide testimony only from A. Kaur and Singh, yet Plaintiffs assert that Raju made these comments to all Plaintiffs.

[5] This hearsay defense applies to Plaintiffs' assertion that Ali and Sayed introduced all of the Defendants to Plaintiffs as owners or partners of Malabar.  For sake of efficiency, Defendants will not repeat this argument when analyzing each Defendants' status as an employer of Malabar.

[6] This argument applies to all Defendants.  For sake of efficiency, Defendants will not repeat this argument when analyzing each Defendants' status as an employer of Malabar.

[7] It should be noted that five of the seven Plaintiffs worked in the kitchen, and since Singh did not see Raju because he worked in the kitchen then none of the other four Plaintiffs who worked in the kitchen could have seen Raju.

Malabar was serving him and his family food. Plaintiffs' Counter-SOF ¶ 79. Additionally, Bambam saw Raju at Malabar only three times a month. Plaintiffs' Counter-SOF ¶ 112.

Plaintiffs also assert that the employees were instructed not to charge their bosses, including Raju, for their meals at Malabar and were instructed to give their bosses anything that they wanted. However, as discussed supra, "boss" does not equate with "employer" under the FLSA, especially considering the circumstances here, where Defendants did not take part in any daily functions of the business and Plaintiffs did not know Defendants.[8] Additionally, as already noted, five of the seven Plaintiffs worked in the kitchen and did not serve food in the dining room. Kamath was the only waiter. Therefore, to the extent that all of the Plaintiffs assert that they did not charge Defendants for meals, such testimony is untruthful. Moreover, to the extent that Plaintiffs testified that Ali and Sayed instructed them not to charge Raju for meals (Kamath Dep. at 52-54), such testimony is inadmissible hearsay. See F.R.E. 802. In any event, even if Ali and Sayed instructed Plaintiffs not to charge Raju for meals, Raju paid for his meals. Raju Dep, at 28.[9]

Additionally, Plaintiffs assert that Raju assured Singh that he would get paid and that Raju spoke to Kamath about Kamath's failure to receive his paychecks from Malabar. However, Singh's testimony merely states that Longi (not Raju) told Singh that the money was not going anywhere.[10] Even if Raju made the statement, it does not constitute an assurance that Raju would pay Plaintiffs or make sure that Malabar paid Singh. For example, Raju could have meant "I'm sure your employer will pay you your wages." Moreover, mere conversations between Raju and Kamath about Kamath's failure to get paid by Malabar have no connection to whether or not Raju was his employer. Kamath may have just been making conversation with Raju during one of the times that Raju ate at Malabar with his family. Plaintiffs' conclusory statement that Raju assured Singh that Singh would get paid is inadmissible, as discussed *supra*.

---

[8] This argument applies to Plaintiffs assertion that since all Defendants did not pay for their meals or leave tips, they were employers. For sake of efficiency, Defendants will not repeat this argument when analyzing each Defendants' status as an employer of Malabar.
[9] Mathews also paid for his meals at Malabar. Mathews Dep. at 67.
[10] Longi is not moving for summary judgment and any references to him in the instant motion should be disregarded.

Plaintiffs also assert that since Raju asked Bambam whether she was satisfied with her job and salary, Raju was Plaintiffs' employer. However, this is not an indicia that Raju was Bambam's employer because there is no evidence that Raju had the power to increase Bambam's salary and improve her overall job satisfaction if she was dissatisfied.

Moreover, Plaintiffs assert that Raju and the other Defendants were Plaintiffs' employers because when Plaintiffs attempted to recover their unpaid wages by taking items from the restaurant, Defendants showed up to protect the items and kept the employees from taking anything. To the extent that Defendants showed up at Malabar to protect the items, they did so because some of them, like Plaintiffs, lent money to Ali and Sayed and wanted to protect everything that Ali and Sayed left behind to cover some of the money that Ali and Sayed owed them. Varughese Dep. at 345-346.

Thus, the evidence clearly establishes that Raju was not Plaintiffs' employer under the FLSA and New York Labor Law.

### 2.    Varughese was not Plaintiffs' employer

Plaintiffs assert that Varughese visited Malabar several times per month and gave instructions to employees. However the evidence provided by Plaintiffs does not support this assertion. Kamath Dep. at 29-31.

To the extent that Plaintiffs assert that when Kamath sought employment related documents such as W2s and 1099 tax forms, he was instructed to speak with Varughese, Plaintiffs mischaracterize Kamath's testimony. Ali and Sayed did not instruct Kamath to speak to Varughese. Rather, Kamath testified that when he asked Ali and Sayed for W2 and 1099 forms, they told him that they would speak to Varughese because Varughese is the accountant and handles that work. Kamath Dep. at 52-54. It is undisputed that Varughese was Malabar's tax preparer (Plaintiffs' Counter-SOF ¶119), and therefore, Ali and Sayed needed to confer with him about such issues.

Similarly, to the extent that Plaintiffs assert that they complained to Varughese about not getting paid, Plaintiffs mischaracterize Kamath's testimony. Indeed, Kamath testified that when he told Varughese that he was not being paid, Varughese told Kamath to speak to Ali and Sayed. Kamath Dep. at 167.

Thus, the evidence clearly establishes that Varughese was not Plaintiffs' employer under the FLSA and New York Labor Law.

### 3.    Mathew was not Plaintiffs' employer

Plaintiffs concede that Mathew did not meet Varughese until June 2003 (Plaintiffs' Additional Statement of Facts, ¶222), yet they assert that Mathew was a partner of Malabar for 8 years (Plaintiffs' Counter-SOF, ¶180).  Plaintiffs' argument is logically flawed.  Plaintiffs expect the Court to believe that for eight (8) years, Varughese and Mathew were so intertwined with the day-to-day business of Malabar that they were both employers under the FLSA and New York Labor Law, yet they concede that Mathew did not meet Varughese until two (2) months before Malabar closed.

Thus, the evidence clearly establishes that Mathew was not Plaintiffs' employer under the FLSA and New York Labor Law.

### 4.    Mathews was not Plaintiffs' employer

Plaintiffs contend that Mathews was an employer of Malabar under the FLSA and New York Labor Law because (1) Mathews was introduced to Baljinder as a partner of Malabar; and (2) Plaintiffs were instructed not to charge Mathews for meals at Malabar.  However, Baljinder testified that she does not even remember being introduced to Mathews.  Baljinder Dep. at 111.

Thus, the evidence clearly establishes that Mathews was not Plaintiffs' employer under the FLSA and New York Labor Law.

### 5.    Lobo was not Plaintiffs' employer

Plaintiffs contend that Lobo gave the kitchen staff at Malabar instructions on a daily basis, and that therefore, he was their employer.  However, to support this assertion, Plaintiffs provide testimony from Kamath and Bambam, the only two (2) Plaintiffs who did not work in the kitchen at Malabar.  Indeed, Plaintiffs admit that the Plaintiffs that actually worked in the kitchen did not know Lobo.   Plaintiffs admit that (1) A. Kaur does not know Lobo (Plaintiffs' Counter-SOF, ¶25 (Plaintiffs' failure to produce admissible evidence disputing that A. Kaur did not know Lobo is an admission)); (2) Baljeet saw Lobo at Malabar one or two times, but she does not remember who he is (Plaintiffs' Counter-SOF, ¶33); (3) Baljinder saw Lobo at Malabar once every 2-3 months, but

they never spoke with each other (Plaintiffs' Counter-SOF, ¶43); and (4) Singh saw Lobo at Malabar once or twice a month, but they never spoke to each other (Plaintiffs' Counter-SOF, ¶69).

Plaintiffs also assert that Lobo had discussions with Plaintiffs about improving the business and what type of equipment to purchase.[11]  To the extent that these discussions occurred (Defendants deny that they did), they occurred in order to help the business so that Lobo could get paid back the money that he lent to Varughese and that ultimately was lent to Ali and Sayed.

Thus, the evidence clearly establishes that Lobo was not Plaintiffs' employer under the FLSA and New York Labor Law.

### B.  Royal Arcadia is not liable to Plaintiffs under the FLSA because it was not a successor to Malabar

With regard to Defendants claim that Royal Arcadia was not a successor to Malabar under the nine-factor test established in Abdel-Khalek v. Ernst & Young LLP, 1999 U.S. Dist. LEXIS 2369 *7 (S.D.N.Y. 1999), Plaintiffs fail to raise issues of material fact.

Under the first factor – whether the alleged successor employer had notice of the complaint – Plaintiffs assert that Royal Arcadia and its owners were aware of Plaintiffs' claims since its inception on August 5, 2003, but Plaintiffs only provide evidence from A. Kaur to support this assertion, and such evidence is inadmissible evidence because it refers only to Longi who is not involved in the instant motion and was never an owner of Royal Arcadia, and Mathew, who was never an owner of Royal Arcadia.  With regard to Plaintiffs' assertion that Defendants were put on notice by a newspaper reporter who interviewed them regarding Plaintiffs' unpaid wages, the newspaper article does not state that Defendants were aware that Plaintiffs were protesting for unpaid wages.  See Exhibit X.[12]  In fact, the newspaper article does not state the purpose for the protest.  Moreover, Plaintiffs do not provide any evidence that the Defendants had knowledge regarding the extent of the money owed to Plaintiffs.

---

[11] Plaintiffs only cite testimony of Kamath to support this assertion.
[12] It should be noted that Exhibit X is an incomplete newspaper article, and therefore is inadmissible. Moreover, the newspaper article is inadmissible hearsay.  See F.R.E. 802.

Under the second factor – the predecessor's ability to provide relief – Plaintiffs assert that since Defendants have abandoned their efforts to recover money that they invested in Malabar, Malabar is incapable of providing relief to Plaintiffs.  However, Plaintiffs incorrectly place the burden of establishing that Malabar cannot provide relief upon Defendants.  Since Plaintiffs (not Defendants) are alleging successor liability, it is Plaintiffs' burden to establish that Malabar is incapable of providing relief.  See Heights v. U.S. Electrical Tool Co., 525 N.Y.S.2d 653,  (App. Div. 2nd Dep't. 1988).  Moreover, to the extent that Plaintiffs assert that they, in fact, tried to locate Ali and Sayed, Plaintiffs have not and cannot rebut Defendants' assertion that Plaintiffs did not take any action to locate Ali and Sayed.  See Baljeet Dep. at 47; A. Kaur Dep. at 92; Baljinder Dep. at 96-97; Singh Dep. at 90-91.

Under the third factor – whether there was a substantial continuity of business – it was not until approximately four months after Malabar closed and renovations were performed on the premises that Royal Arcadia opened for business.  See Defendants SOF ¶ 89 (to which Plaintiffs did not respond).  Moreover, as discussed below, the workforce, food, and equipment at Royal Arcadia were different than that at Malabar.

Under the fourth factor – whether the alleged successor uses the same facility – although it is indisputable that Royal Arcadia used the same premises as Malabar, it is also indisputable that (1) Royal Arcadia searched for other locations in Queens and Brooklyn before signing the lease for the premises where Malabar was located (Defendants' SOF ¶ 84, which is not rebutted by Plaintiffs); (2) renovations were performed on the premises after the lease was signed and before Royal Arcadia opened (Defendants' SOF ¶ 89, which is not rebutted by Plaintiffs); and (3) there were changes to the appearance of the premises when Royal Arcadia opened.  (Plaintiffs' Counter-SOF ¶ 92).  Thus, it is indisputable that the appearance of the facility changed when Royal Arcadia operated its restaurant there.

Under the fifth factor – whether the successor uses the same workforce – Plaintiffs, without providing any admissible evidence, dispute that Singh, Charenjeet, and Jose Santiago were the only employees that worked at Malabar and Royal Arcadia on the ground that Malabar and Royal

Arcadia did not keep accurate employee lists. Notably, Plaintiffs do not dispute that (1) Singh did not work at Royal Arcadia until one to one and a half years after Royal Arcadia opened; and (2) Santiago did not seek a job at Royal Arcadia and was not hired until three weeks after it opened. (Defendants' SOF ¶ 93, which is not rebutted by Plaintiffs). Thus, there is no continuity of employment and Royal Arcadia did not, on its own, seek to employ the same individuals that worked at Malabar. These individuals came into Royal Arcadia to seek employment on their own, well after they last worked at Malabar. Moreover, these three individuals were only three of at least twenty-three Royal Arcadia employees that worked at Malabar. (See Exhibit T).

Under the sixth factor – whether the successor uses the same or substantially the same supervisory personnel – as discussed *supra* under Point II.A.1-5, Defendants were not supervisors at Malabar. Thus, Royal Arcadia did not employ the same supervisors that Malabar employed.

With regard to the seventh and eighth factors – whether the same jobs exist under substantially the same working conditions and whether the alleged successor uses the same machinery, equipment and methods of production – Plaintiffs do not dispute that these factors should not be given strong weight since job duties at all restaurants are the same, and all restaurants use the same equipment (e.g. stoves, ovens, etc.).

Under the ninth factor – whether the alleged successor produces the same product – Plaintiffs do not dispute that Malabar served Indian food and "food that Black people eat" while Royal Arcadia served only Indian food. (Plaintiffs' Counter- SOF ¶ 94, which does not rebut that Malabar served "food that Black people eat").

Thus, the factors weigh overwhelmingly in favor of no successor liability, and Royal Arcadia is not responsible for Plaintiffs' unpaid wages.

## C.  Plaintiff's FLSA claims are barred by the statute of limitations

Plaintiffs assert, without any support from courts in this circuit, that merely alleging that a FLSA violation was willful (which extends the statute of limitations from two to three years) is a fact issue for the jury, and that summary judgment with respect to the issue must be denied. To the

contrary, in <u>Toles v. Schillaci</u>, 2006 U.S. Dist. LEXIS 96178 (W.D.N.Y. 2006), the court dismissed an FLSA action on summary judgment because the factual, legal and regulatory evidence in the record did not provide proof of willfulness to permit the statute of limitations to be extended from two to three years.  <u>See</u> <u>also</u> <u>Rodriguez v. Potter</u>, 2005 U.S. Dist. LEXIS 45206 *3 (S.D. Tex. 2005); <u>Wolfslayer v. Ikon Office Solutions, Inc.</u>, 2004 U.S. Dist. LEXIS 22625 *11 (E.D. Pa. 2004).

In this case, like in <u>Toles</u>, Plaintiffs have not set forth or established facts that Defendants' alleged violation of the FLSA was willful.  Plaintiffs' Complaint and the record are barren of any evidence that Defendants (1) were responsible for paying Plaintiffs; (2) had knowledge about Malabar's pay policies; or (3) had knowledge of Plaintiffs' salaries.  Instead, the indisputable evidence shows that Ali and Sayed (not Defendants) were responsible for paying Plaintiffs.  Plaintiffs' Counter-SOF, ¶¶ 38, 54, 64, 76.[13]  Thus, even assuming that Defendants were Plaintiffs' employers, they did not willfully fail to pay Plaintiffs their proper wages.

## POINT III

### THE INDIVIDUAL DEFENDANTS ARE NOT PERSONALLY LIABLE TO PLAINTIFFS FOR THE NEW YORK STATE FRAUD AND BREACH OF CONTRACT CLAIMS[14]

Plaintiffs assert that Defendants were owners/partners of Malabar because they provided loans to Ali and because Defendants were introduced to Plaintiffs as partners of Malabar and did not

---

[13] Since, as discussed *supra*, summary judgment must be granted to the Defendants on the FLSA issues and Plaintiffs do not assert any other federal claims against the Defendants, this Court should decline supplemental jurisdiction over the remaining state claims.  <u>See</u> <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); <u>Kolari v. New York-Presbyterian Hosp.</u>, 455 F.3d 118, 119 (2d Cir. 2006); <u>Brewster v. Nassau County</u>, 349 F. Supp. 2d 540, 548 (E.D.N.Y. 2004); <u>Xelo v. Mavros</u>, 2005 U.S. Dist. LEXIS 21588 (E.D.N.Y. 2005).

[14] Although the title of  Point VI of Plaintiffs' memorandum of law in opposition states that the individual owners of Malabar are personally liable to Plaintiffs under successor liability, Point VI is devoid of any discussion or basis for finding the <u>individual owners</u> liable to Plaintiffs as successors.  Point VI merely addresses the liability of <u>Royal Arcadia</u> as a successor to Malabar.

Plaintiffs' memorandum in opposition asserts that Defendants are liable to all Plaintiffs for fraud and breach of contract for repayment of employee loans.  (Plaintiffs' memorandum in opposition at 25).  However, only Plaintiffs A. Kaur, Singh, and Baljinder have brought a claim for fraud and breach of contract for repayment of employee loans against Defendants.  (See Defendants SOF, Exhibit S ¶ 46-49, 86-89).  Therefore, inasmuch as Plaintiffs' memorandum in opposition refers to "Plaintiffs" with respect to the fraud claim and the breach of contract claim for repayment of employee loans, Plaintiffs' Kamath, Baljeet, Patel, and Bambam are precluded from recovery for such claims.

object.   However, Plaintiffs also assert that since "Ali and Sayed fled the country … <u>Malabar</u> (emphasis added) is not capable of providing relief to Plaintiffs."   (Plaintiffs' Memorandum in Opposition at 23).   Thus, Plaintiffs admit that Ali and Sayed were the sole owners/partners of Malabar and are the only individuals liable for Malabar's debts.

Moreover, a loan is "a grant of the temporary use of something." Dictionary.com.   Merely providing a loan to an entity does not make one an owner of that entity.   Even assuming, as Plaintiffs assert, that the loans that Defendants' gave to Ali (via Varughese) were for Malabar and not for Ali personally, the mere giving of the loans did not make Defendants owners of Malabar, and therefore, Defendants are not liable for Malabar's debts.   <u>See Harris v. Adejumo</u>, 830 N.Y.S. 2d 561 (App. Div. 2nd Dep't. 2007)(holding that lending company did not owe plaintiffs a duty).   To the extent that Defendants Varughese, Raju, Thomas and Lobo provided loans to Malabar (via Varughese), they acted merely as banks.   It is axiomatic that a loan does not make a bank or other lender an owner of the entities to which they provide loans, and thereby liable for all wrongdoings by the entity.

Based on Plaintiffs' reasoning that Defendants were owners of Malabar because they provided loans to Ali, Plaintiffs A. Kaur, Baljinder, and Singh were also owners of Malabar since they admittedly provided Ali and Sayed with loans.[15]   Plaintiffs' Counter-Statement of Material Facts ¶¶ 21, 40, 65.

Plaintiffs' assertion that Defendants may be held liable for the debts of Malabar based on their partnership with Ali and Sayed under New York Partnership Law or under a partnership by estoppel theory should be dismissed because Plaintiffs' Complaint is devoid of any such claim. <u>Briarpatch Ltd., L.P. v. Frankfurt, Garbus, Klein & Selz, P.C.</u>, 787 N.Y.S.2d 267 (App. Div. 1st Dep't. 2004).

In any event, Plaintiffs' own admission that <u>Malabar</u> (not just Ali and Sayed) was incapable of providing relief to Plaintiffs when Ali and Sayed fled the country (Plaintiffs' opposition

---

[15] Singh even admitted that he was entitled to a share of the profits of Malabar.  (Plaintiffs' Counter-Statement of Material Facts ¶ 65).

memorandum at 23) establishes that Ali and Sayed were the <u>only</u> owners and/or partners of Malabar. Moreover, Defendants were not partners of Malabar, because as discussed *supra* (Point II.A.1-5), they did not share in the profits and losses, they did not have joint control or manage Malabar, they did not contribute effort skill or knowledge to Malabar, and they did not intend to be partners. <u>See Kidz Cloz, Inc. v. Officially for Kids, Inc.</u>, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004). At most, Defendants provided loans to Malabar.[16] Plaintiffs also assert that Defendants shared in the profits since Ali and Sayed told Defendants that they would not be paid back for the loans unless Malabar made money. Plaintiffs do not provide evidence indicating when Ali and Sayed made these statements to Defendants. The statements could have been made well after the loans were provided, and when Defendants inquired about when they would be repaid. It could have meant that Ali and Sayed would not have money to pay back Defendants unless Malabar was profitable. Therefore, Plaintiffs have not provided admissible evidence to support their assertion that Defendants shared in the profits and losses of Malabar as these statements are concluding at best.

With regard to Plaintiffs' partnership by estoppel theory of liability, Plaintiffs assert that (1) Defendants held themselves out as partners of Malabar; and (2) Plaintiffs relied on representations of the existence of a partnership between Defendants and Ali and Sayed.

However, as discussed *supra*, Plaintiffs have merely provided inadmissible hearsay evidence that Ali and Sayed told Plaintiffs that Defendants were partners of Malabar and have provided no evidence that Defendants held themselves out as partners of Malabar. Defendants deny hearing Ali and Sayed introduce them to Plaintiffs as partners of Malabar. (Defendants' SOF ¶131). Plaintiffs' assertion that a reasonable person would have objected to being represented as an owner and being given benefits as owners is conclusory. "Silence is not evidence of an admission, unless there are circumstances which render it more reasonably probable that a man would answer the charge made against him than that he would not." <u>United States v. Aponte</u>, 31 F.3d 86, 87 (2d Cir.

---

[16] Plaintiffs assert that Defendants understood that they would share in the profits of Malabar and only be repaid the loans if Malabar was profitable. However, Plaintiffs cite Mathews' testimony wherein he stated that he would be repaid for a loan that he made to Royal Arcadia (not Malabar) if Royal Arcadia was profitable. (Plaintiffs Memorandum of Law at 28, Thomas Dep. at 22). Clearly, Mathews' testimony does not support the proposition that Plaintiffs' assert.

1994).   Unlike in <u>Phipps v. Comprehensive Cmty. Dev. Corp.</u>, 2005 U.S. Dist. LEXIS 1672 (S.D.N.Y. 2005) (cited by Plaintiffs), where the declarant did not respond when questioned about discriminatory statements that he allegedly made, here, Defendants' alleged failure to object was not unreasonable because Defendants were not being accused of any wrongdoing.   A reasonable person in Defendants' situation would not have addressed the issue of whether or not Defendants were partners of Malabar in the presence of employees, like Plaintiffs. There simply is no need to correct or clarify this statement.   Moreover, Defendants provided loans to Ali and Sayed, so they may have been business partners with Ali and Sayed (but not partners of Malabar under New York Partnership law).   Furthermore, Plaintiffs' testimony was merely that Ali and Sayed introduced Defendants as their partners, but not as partners of Malabar.   (Singh Dep. at 60-61; A. Kaur Dep. at 93; Baljeet at 48; Baljinder at 53).[17]

Therefore, the individual Defendants were not owners and/or partners of Malabar, and A. Kaur, Singh, and Baljinder cannot recover from the individual Defendants for fraud or breach of contract.

**POINT IV**

**ROYAL ARCADIA IS NOT A SUCCESSOR TO MALABAR UNDER NEW YORK LAW**

    **A.  Royal Arcadia did not expressly or impliedly agree to assume Malabar's debts**

---

[17] Moreover, Plaintiffs have not established that they relied on any representations that Plaintiffs were partners of Malabar.   Plaintiffs assert that they provided loans to Ali and Sayed in reliance on the existence of a partnership between Ali, Sayed, and Defendants.   However, there is no evidence that Plaintiffs provided loans to Ali after Plaintiffs allegedly were told that Defendants were partners with Ali and Sayed.   Plaintiffs also assert that they performed their hired positions in reliance on the partnership between Ali, Sayed, and Defendants.   This case is inapposite to Sitchenko v. Di Resta, 512 F. Supp. 758, (E.D.N.Y. 1981), cited by Plaintiffs for the proposition that the reliance required under a partnership by estoppel theory can be satisfied by performing a hired position.   In Sitchenko, the plaintiff entered into an employment agreement with defendants in reliance upon representations of the identity of the partners.   To the contrary, here, Plaintiffs do not assert that they decided to work at Malabar because they were told that Defendants were partners of Ali and Sayed.   In fact, there is no evidence that Plaintiffs even knew Defendants when they accepted employment at Malabar.

Plaintiffs rely on the convoluted testimony of Sang, the landlord of the premises where Malabar and Royal Arcadia were located, to assert that Royal Arcadia made an express agreement with Sang to pay Malabar's rent arrearages: Sang testified that around the time that Royal Arcadia signed the lease, it paid Sang $75,000 for Malabar's back rent of $15,000 per month for the months of March 2003, April 2003, May 2003, June 2003, and July 2003.  (Sang Dep. at 24; Sang Exhibit 4). Then Sang contradicted this testimony by testifying that, pursuant to a Supplemental Rider (Sang Exhibit 1, page 28), Royal Arcadia paid him $45,000 for all of Malabar's back rent (Sang Dep. at 44-45).  However, the Supplemental Rider required Royal Arcadia to pay $5,000 for nine months in exchange for "the right to use any and all existing trade fixtures, furnitures, appurtenances and equipment within the demised premises…"  The Supplemental Rider made no reference to payment of back rent.  Then, after Plaintiffs' counsel provided evidence to Sang that was not in the record (Sang Dep. at 22), Sang testified that he "understood" (emphasis added) that the purpose behind the Supplemental Rider (Sang Exhibit 1, page 28) was for Royal Arcadia to pay Sang for Malabar's back rent.  Sang Dep. at 22, 44-45.

However, when the meaning of a contract is plain and clear it is entitled to be enforced according to its terms.  Levy v. Aetna Cas. & Sur. Co., 658 N.Y.S.2d 939, 941 (Sup. Ct. Nassau County, 1997); 200 Genesee St. Corp. v. City of Utica, 6 N.Y.3d 761 (2006).  Extrinsic and parol evidence are not admissible to create an ambiguity in a written agreement that is complete and clear and unambiguous on its face.  South Rd. Assocs., LLC v. IBM, 4 N.Y.3d 272, 278 (2005); New Paradigm Software Corp. v. New Era of Networks Inc., 2002 U.S. Dist. LEXIS 23753 (S.D.N.Y. 2002).  In this case, the Supplemental Rider contains no ambiguous terms.  Therefore, the Supplemental Rider speaks for itself.  Thus, Sang's "understanding" of the purpose behind the Supplemental Rider is irrelevant.  Indeed, the purpose of the Supplemental Rider was for Royal Arcadia to pay $5,000 for nine months in exchange for the right to use any and all existing trade fixtures, furnitures, appurtenances and equipment within the demised premises.[18]  If the parties

---

[18] It should be noted that Defendants' Statement of Material Facts ¶ 88 contained a typographical error.  Defendants requested leave to amend ¶ 88, and Plaintiffs did not object.  Nevertheless, the Court denied Defendants' request.  In

agreed that Royal Arcadia would pay Malabar's rental arrearages, they would have entered into a contract with such terms.

Moreover, although Sang testified as to his understanding of the Supplemental Rider, he also testified that his understanding was based on what his lawyer told him.  Sang Dep. at 36-37.  The conversation between Sang and his attorney regarding Defendants' payment of Malabar's back rent is hearsay, and is inadmissible.  See F.R.E. 802.

Plaintiffs assert that Royal Arcadia impliedly assumed Malabar's debt of unpaid wages and loans owed to Plaintiffs because Malabar ceased operating after Royal Arcadia took possession of the restaurant and of Malabar's assets.  However, Plaintiffs also state that Royal Arcadia took possession of the premises after Malabar closed, not before it closed.  (Plaintiffs' memorandum in opposition at 14).  Moreover, the testimony relied upon to support Plaintiffs' argument that Royal Acradia took possession of the premises immediately after Malabar ceased operating does not support this proposition.  Kamath Decl. ¶ 7.  As Plaintiffs correctly point out, Malabar closed on August 14, 2003 and Royal Arcadia did not sign its lease for the premises until September 30, 2003.  Moreover, Royal Arcadia did not open for business until December 14, 2003.  (Defendants' SOF ¶ 89, which Plaintiffs do not dispute).  Additionally, Defendants did not take possession of Malabar's assets.  In fact, Sang testified that any of the trade fixtures, furnitures, appurtenances and equipment that was left on the premises belonged to him.  Sang Dep. at 42.  To the extent that the trade fixtures, furnitures, appurtenances and equipment once belonged to Malabar, Royal Arcadia did not take possession of them until September 2003 (after Malabar closed in August), when the Supplemental Rider was executed.

Moreover, Plaintiffs assert that Royal Arcadia impliedly assumed Malabar's debt of unpaid wages and loans to Plaintiffs because Raju told Singh "don't worry.  Everything will be alright.  You'll get your money."  This alleged statement, even if made, does not constitute an admission that Royal Arcadia promised to pay Plaintiffs.

any event, ¶ 88 should read "Royal Arcadia agreed to pay Sang $45,000 for the use of the equipment that was left on the premises by Malabar and that belonged to Sang."

Thus, the record is devoid of any evidence that Defendants agreed to assume Malabar's debt.

### B.  Royal Arcadia was not a mere continuation of Malabar

The mere continuation exception applies where, after a corporate transfer, only one corporation remains which has a common identity of directors and stockholders.  People's Ins. Co. of China v. Independent Radiator Sales, Inc., 1999 U.S. Dist. LEXIS 2979 (S.D.N.Y. 1999).

In the case at hand, there is no evidence of a corporate reorganization of Malabar.  Malabar closed, its owners[19] fled, and more than four months later, a new restaurant opened on the premises where it was located.  Neither Malabar nor Royal Arcadia issued stock, so there were no shareholders of either business, and neither business had directors.  Moreover, as discussed *supra* (Point III.B), Defendants were not owners or partners of Malabar.  Additionally, as discussed *supra* (Point II.B), Malabar's assets were not transferred by Malabar to Royal Arcadia.

Thus, the record is devoid of any evidence that Royal Arcadia was a mere continuation of Malabar.

### C.  Plaintiffs failed to plead with particularity that there were fraudulent transactions made by Malabar and Royal Arcadia, and in any case, there were no such fraudulent transactions

Where, like here, a veil-piercing claim is based on allegations of fraud, "the heightened pleading standard of Rule 9(b) is the lens through which those allegations must be examined." EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508 (S.D.N.Y. 2005) citing In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 425 (S.D.N.Y. 2003).  Fed.R.Civ. Proc 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  To comply with Fed.R.Civ. Proc 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

---

[19] Ali and Sayed each had a 50% ownership share in Malabar.  Varughese Aff. ¶10, Attachment 1, documents 288-313.  Varughese's uncontroverted testimony shows that Varughese filed Malabar's tax returns with the IRS. Varughese Dep. at 315.

(3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).

In this case, the Complaint fails to allege with specificity the manner in which Malabar fraudulently entered into transactions with Royal Arcadia to escape its obligations to Plaintiffs.

Even assuming *arguendo* that Plaintiffs properly pled with specificity the manner in which Malabar entered into fraudulent transactions with Royal Arcadia to escape its obligations to Plaintiffs, there is no issue of material fact in dispute. Plaintiffs correctly assert that courts look to "badges of fraud" to determine if the circumstances permit an inference that a fraudulent conveyance occurred. People's Ins. Co. of China v. Independent Radiator Sales, Inc., 1999 U.S. Dist. LEXIS 2979 (S.D.N.Y. 1999). However, as discussed below, there is no material issue of fact in dispute that an inference cannot be drawn that a fraudulent transfer occurred.

Plaintiffs assert that Defendants have been close friends and business partners for nearly thirty years. This assertion is false. In fact, Varughese and Lobo are not in the same social circle (Varughese Dep. at 302-303), Lobo does not know the entities in which Raju holds interests (Lobo Dep. at 26-27), and Raju did not meet Mathew until the time that Royal Arcadia was open (Raju Dep. at 22-23). In any event, the personal relationships between Defendants provides no indicia of the alleged fraud.[20]

Plaintiffs assert that Royal Arcadia negotiated its lease prior to its incorporation and prior to the shutdown of Malabar. This is false. Varughese spoke with Albert Sang about leasing space at the end of August 2003 after Ali and Sayed fled. Varughese Dep. at 169. Moreover, the lease that Varughese negotiated with Albert Sang was the first lease that Varughese ever negotiated with Sang and initially, was for a sweets store that would be located at the store on the corner of the block where Malabar was located, not for the premises where Malabar was located. Varughese Dep. at 114, 116. Further, Royal Arcadia sought a storefront in various neighborhoods in Queens and

---

[20] Plaintiffs assert that since Defendants are shrewd businessmen, they have no hesitation in manipulating the corporate form to avoid their obligations. This conclusory statement has no bearing on whether Defendants entered into fraudulent transactions with Malabar to escape their obligations to Plaintiffs.

Brooklyn prior to negotiating a lease with Sang.  (Defendants' SOF ¶ 84, which is not disputed by Plaintiffs).[21]

The case relied upon by Plaintiffs is inapposite to the case at hand.[22]

Lastly, Plaintiffs' assertion, that on other occasions, Defendants have attempted to manipulate the corporate form to overcome legal obstacles lacks any evidentiary basis.  The evidence is clear that Royal Arcadia merely changed its name to Namaskar because it hired a new manager and wanted a catchy name.  Varughese Dep. at 123-125.  The evidence is also clear that Namaskar and Namaskar NYC Inc. are separate entities.  Namaskar NYC Inc. is a company that Kausik Roy and Shahala Islam are attempting to form.  K. Roy Dep. at 12.  Namaskar NYC is not owned and operated by Defendants.

Thus, the record is devoid of any evidence that Malabar incorporated under the name Royal Arcadia to fraudulently escape its obligations to Plaintiffs.

### D.  There was no de facto merger between Malabar and Royal Arcadia

The facts of this case do not establish that a de facto merger occurred between Malabar and Royal Arcadia.

First, it is indisputable that Ali and Sayed, the only owners of Malabar, were not involved with Royal Arcadia.   Plaintiffs SOF ¶254.  Thus, there was no continuation of ownership.

Second, there is no evidence of any transaction involving the transfer of Malabar by Ali and Sayed to Royal Arcadia's owners.

---

[21] Plaintiffs also assert that on August 14, 2003, the day that Malabar closed, Defendants advised Plaintiffs that they "would be paid."  However, the testimony provided by Plaintiffs to support this assertion refers only to Longi making this statement.  However, Longi did not file the instant motion for summary judgment.

[22] In Baker v. Dorfman, 2000 U.S. Dist. LEXIS 10142 (S.D.N.Y. July 20, 2000), cited by Plaintiffs, the court held that the defendant formed a PLLC as a fraudulent attempt to escape his obligation to plaintiff because the PLLC was formed shortly after an amended judgment was entered against defendant and shortly after defendant's account was restrained, and defendant had a pretextual reason for forming the PLLC (to facilitate his paying of the judgment owed to the plaintiff).  To the contrary, in the case at hand, the original purpose of opening Royal Arcadia was to sell sweets.   (Defendants' SOF ¶ 84).  It was not until after Malabar closed that Royal Aradia decided to rent the premises where Malabar was located.  Id.  At that point, Plaintiffs had not filed a complaint against Defendants.  In fact, not until more than two years later did Plaintiffs actually file the instant action.

Third, Royal Arcadia did not assume any of Malabar's liabilities for the uninterrupted continuation of Malabar's business.  In fact, there was more than a four (4) month interruption between when Malabar closed and when Royal Arcadia opened.  (Defendants' SOF ¶89, which is not disputed).  Moreover, contrary to Plaintiffs' assertion, Royal Arcadia did not assume Malabar's rent arrears.  See Point IV.A *supra*.

Fourth, there was no continuation of Malabar's management, assets, or general business operation.  Although three non-supervisory Malabar employees at some point worked for Royal Arcadia, at least two (2) of those employees did not work at Royal Arcadia when Royal Arcadia opened for business.  (Defendants' SOF ¶93, which is not disputed).  Moreover, equipment is the only asset of Malabar that Plaintiffs assert that Royal Arcadia used.  Although at one time Malabar may have owned some of the equipment that Royal Arcadia used, Royal Arcadia rented the equipment from the landlord of the premises, who owned the equipment.   (See Point IV.A *supra*).

Thus, the record is devoid of any evidence that there was a de facto merger between Malabar and Royal Arcadia.

### POINT V

### DEFENDANTS DID NOT DEFRAUD PLAINTIFFS A. KAUR, SINGH, AND BALJINDER

As stated *supra*, Fed.R.Civ. Proc 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity, and to comply with Fed.R.Civ. Proc 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).

Plaintiffs' complaint fails to meet this heightened pleading requirement because Plaintiffs have not identified the speaker or the time and location that the alleged fraudulent statements were made.[23]

To the extent that Plaintiffs A. Kaur, Singh, and Baljinder generally allege in the complaint that all of the Defendants made fraudulent misrepresentations to them, A. Kaur, Singh, and Baljinder have not provided any admissible evidence to support this allegation. To the contrary, the evidence provided by Plaintiffs is that Ali and Sayed (not Defendants) made such representations (whether true or false). See Baljinder Dep. at 92-93, 124, 126, Singh Dep. at 46, A. Kaur Dep. at 81-82, 86, 88, 99.[24] Thus, A. Kaur, Singh, and Baljinder have not provided any evidence to support their allegation that Defendants made fraudulent misrepresentations to them.

To the extent that A. Kaur, Singh, and Baljinder generally allege in the complaint that Defendants made the fraudulent representations "prior to the Blackout", such an allegation is not specific enough to meet the heightened pleading requirement because it refers to the entire time that Malabar was in existence.[25]

---

[24] To the extent that Longi made representations to A. Kaur, Singh, and Baljinder regarding loans and wages, such testimony should not be considered in the instant motion.

[25] It should be noted that A. Kaur, Singh, and Baljinder allege in the complaint that Defendants made the fraudulent representations "prior to the Blackout" but in their memorandum in opposition, they allege that after the Blackout, additional fraudulent representations were made. Since A. Kaur, Singh, and Baljinder did not allege in their Complaint that Defendants made fraudulent misrepresentations to them after the Blackout, A. Kaur, Singh, and Baljinder are precluded from recovering for such claims. In any event, Plaintiffs' argument that after Ali and Sayed fled, Defendants promised Plaintiffs that they would be paid is not supported by the evidence. The evidence merely refers to Longi, a non-moving party. Even assuming that Defendants made such statements, they do not constitute promises that Plaintiffs would be paid back wages by Defendants.

　　　　Even assuming *arguendo* that Defendants made the alleged misrepresentations to A. Kaur, Singh, and Baljinder that they would be paid their unpaid wages and loans, A. Kaur, Singh, and Baljinder cannot establish justifiable reliance. Since A. Kaur, Singh, and Baljinder assert that they were not paid wages for most of their employment at Malabar despite their alleged continuous complaints, it is inconceivable that they would continue to rely on representations allegedly made by Defendants throughout their employment at Malabar that they would be paid all of their wages. Thus, Plaintiffs A. Kaur, Singh, and Baljinder cannot establish that they reasonably relied on Defendants' misrepresentations that they would be paid their back wages and loans.

**POINT VI**

**PLAINTIFFS' FRAUD AND BREACH OF CONTRACT CLAIMS FOR UNPAID WAGES ARE PREEMPTED BY THE FLSA AND TO THE EXTENT THAT PLAINTIFFS ARE DENIED DAMAGES UNDER THE FLSA, THIS COURT DOES NOT HAVE JURISDICTION TO DECIDE PLAINTIFFS' STATE CLAIMS**

Plaintiffs' fraud claim alleges that Defendants misrepresented that they intended to repay Plaintiffs' back wages and loans.  See Defendants SOF Exhibit Exhibit S, ¶ 46. Plaintiffs' breach of contract claim for nonpayment of wages alleges that Defendants failed to pay Plaintiffs' back wages. Plaintiffs wrongfully assert in their opposition to defendants' motion for summary judgment that plaintiffs' claims for fraud and breach of contract for failure to pay wages are "founded on the non-repayment of their <u>loans</u>, not minimum wage and overtime payments."  (Plaintiffs' memorandum in opposition at 30).  Clearly, these claims are grounded on the same facts as the FLSA: failure to pay wages.  Thus, they must be dismissed as duplicative.  <u>See</u> <u>Petras v. Johnson</u>, 1993 U.S. Dist. LEXIS 8464 *8 (S.D.N.Y. 1993)(preemption of fraud claim that alleged that defendants made false representations to plaintiff to lead him to believe he was not entitled to overtime compensation).[26]

**POINT VII**

**PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF**

To the extent that Plaintiffs claims under quantum meruit and unjust enrichment are not dismissed out of hand because of laches[27], the claims must be dismissed because Defendants received no benefit from Plaintiffs.  Defendants have not received repayment of any of the monies that they indirectly loaned Ali and did not share in any of the profits from Malabar.

---

[26] Even assuming *arguendo* that Plaintiffs fraud and breach of contract claims are not preempted by the FLSA or Plaintiffs' FLSA claims are dismissed, this Court should not exercise supplemental jurisdiction over Plaintiffs' state claims.  <u>See</u> <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

[27] Plaintiffs contend that laches is inapplicable to this case.  Although Plaintiffs correctly assert that laches is inapplicable to actions seeking damages at law with express statutes of limitations, Plaintiffs' Complaint asserts equitable claims for unjust enrichment, quantum meruit, and successor liablility (The doctrine of successor liability is equiable in nature.  Burke v. Hamilton Installers, Inc., 2004 U.S. Dist. LEXIS 18021 (W.D.N.Y. 2004).  For the reasons set forth in Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, Plaintiffs' these equitable claims are barred by laches.

## CONCLUSION

The record demonstrates that there are no genuine issues of material fact and summary judgment should be granted in favor of Defendants Royal Arcadia Palace, Inc., George Raju Varghese, George, Varughese, Roy Mathew, Thomas Mathews, and Carmo Lobo.


Dated: Lake Success, New York
      August 17, 2007

                           Respectfully submitted,

                           MILMAN & HEIDECKER


                           /s/ Joseph M. Labuda
                           Joseph M. Labuda (JL 5213)
                           Jamie S. Felsen (JF 7876)
                           Attorneys for Defendants Royal
                           Arcadia Palace, Inc., George Raju
                           Varghese, George Varughese, Roy
                           Mathew, Thomas Mathews, and
                           Carmo Lobo
                           3000 Marcus Ave., Suite 3W3
                           Lake Success, NY  11042
                           (516) 328-8899